UNITED STATES of America,
Plaintiff-Appellant,

v.

David Alan WAYTE, Defendant-Appellee.

No. 82–1699.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 1983.

Decided July 19, 1983.

Steven S. Trott, U.S. Atty., Los Angeles, Cal., John Fichter De Pue, Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Mark S. Pulliam, Sepulveda, Cal., for amicus Gulf & Great Plains.

Mark Rosenbaum, American Civil Liberties Union of Southern Cal., Los Angeles, Cal., for defendant-appellee.

Joseph Beeler, Miami, Fla., for amicus Nat. Ass'n of Crim. Defense Lawyers.

Melinda R. Bird, Los Angeles, Cal., for amicus Nat. Lawyers Guild.

Before WRIGHT and SCHROEDER, Circuit Judges, and COUGHENOUR, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Wayte was indicted for failure to register for the draft under section three of the Military Selective Service Act, 50 U.S.C. App. § 453. The district court dismissed the indictment based on its finding of selective prosecution and its conclusion that the implementing Presidential Proclamation was issued invalidly. *United States v. Wayte,* 549 F.Supp. 1376 (C.D.Cal.1982).

BACKGROUND

On July 2, 1980, pursuant to statutory authority, President Carter issued Presidential Proclamation 4771, directing male citizens born during 1960 to register with the Selective Service System during the week of July 21, 1980. 45 Fed.Reg. 45,247 (1980). Appellee fell within that class, but did not register. On August 4th he wrote to Selective Service, declaring that he had not registered and did not plan to do so. He sent a similar letter to the President.

Six months later he wrote another letter to Selective Service, stating that he still had not registered. He noted that he would be "traveling the nation . . ., encouraging resistance and spreading the word about peace and disarmament."

Selective Service established a passive enforcement system through which it began to process information it received that specific men had not registered. Two categories were involved: those who wrote to Selective Service stating that they refused to register and those who were reported by others as refusing to register.

Selective Service screened out those who actually had registered, who were not required to register, or for whom it had insufficient information to investigate further. It sent letters to the rest, including Wayte, explaining the registration requirement, requesting compliance, and warning of possible prosecution for noncompliance. Wayte did not respond.

In July 1981 Selective Service transmitted the files of 134 nonregistrants to the Department of Justice for possible prosecution. Those still eligible but noncomplying were referred to the FBI for investigation

---

* Of the Western District of Washington.

and to the United States Attorney of the district of their residence. The United States Attorneys notified the men referred that unless they registered within a specified time, prosecution was possible. Such a letter was sent to Wayte on October 15. He did not respond.

In December 1981 a moratorium on efforts to prosecute was imposed. Nonregistrants were afforded a grace period, until February 28, 1982, within which to register.

On July 22, 1982 Wayte was indicted for willfully failing and refusing to register, in violation of 50 U.S.C.App. § 462.

After a hearing, the district court held that Wayte had made a showing of selective prosecution, which warranted an evidentiary hearing on the issue. Wayte sought discovery of government documents relating to the prosecution of nonregistrants, including documents of the Department of Justice, Selective Service, Presidential Military Manpower Task Force, White House staff, and Department of Defense.

He sought to subpoena several government officials, including Presidential Counsellor Edwin Meese III, Selective Service Director Thomas Turnage, Secretary of Defense Caspar Weinberger, and Assistant Attorney General D. Lowell Jensen.

The court ordered production of some documents and ordered that Meese be made available to testify. The government refused to comply fully.

The court dismissed the indictment. *Wayte,* 549 F.Supp. 1376. It held that the government had not rebutted Wayte's prima facie case of selective prosecution. *Id.* at 1380–85. It held also that the implementing Presidential Proclamation was not promulgated properly. *Id.* at 1389–91.

I. *Selective Prosecution*

█ To establish selective prosecution, a defendant must show that others similarly situated have not been prosecuted and that the prosecution is based on an impermissible motive. *United States v. Ness,* 652 F.2d 890, 892 (9th Cir.), *cert. denied,* 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981).

The first element of that test has been established. The district court found that over 500,000 eligible men have failed to register for the draft. When this indictment was dismissed, only 12 others had been indicted for failure to register. All were vocal nonregistrants. The government does not dispute these facts. Many similarly situated men have not been prosecuted. *See United States v. Taylor,* 693 F.2d 919, 923 & n. 6 (9th Cir.1982).

█ However, Wayte has not shown that he was selected from the larger group because of his exercise of his constitutional rights. *See id.* at 923. Selectivity in prosecution is not impermissible. *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962). He must show that the selection was deliberately based on an unjustifiable standard. *United States v. Steele,* 461 F.2d 1148, 1151 (9th Cir.1972).

The government may not purposefully discriminate against persons who exercise their First Amendment rights. *Id.* Wayte contends that the government was aware that its passive enforcement system would result in the prosecution of vocal nonregistrants only. He argues that because the system was tainted, the government's ignorance of his First Amendment activity is irrelevant.

The evidence presented by Wayte does not demonstrate impermissible motivation. It demonstrates that the government was aware that the passive enforcement system would result in prosecutions of primarily two types of men: religious or moral objectors and vocal objectors. The government recognized that the latter probably would make claims of selective prosecution.

Wayte made no showing that the government focused its investigation on him because of his protest activities. *See Ness,* 652 F.2d at 892. He did not show that discriminatory policies underlay the selection of cases for prosecution. *See id.*

The circumstances here contrast sharply with those in *United States v. Steele,* 461 F.2d 1148 (9th Cir.1972), in which selective prosecution for noncooperation with the census was established. There census procedures would in the normal course identify noncooperators and furnish evidence of criminal intent. *Id.* at 1152. The government investigated only those who publicly attacked the census. *Id.* It offered no explanation for its selection except prosecutorial discretion. *Id.*

Unlike census procedures, Selective Service registration procedures do not automatically reveal the identities of nonregistrants. The government investigated all whose names were brought to its attention.

The government offers two explanations for its selection procedure: (1) the identities of other violators were not known, and (2) violators who expressed their refusal to register made clear their willful violation of the law.

The first explanation is logical and does not evidence impermissible motives. Moreover the government has made an effort to establish a system for identifying nonregistrants who are not otherwise brought to its attention.

■ The second justification is permissible also. The government may, in making prosecutorial decisions, "consider whether the potential defendants have, by their public statements or otherwise, made clear their actual or intended participation in the illegal activity." *Taylor,* 693 F.2d at 923 (footnote omitted).

■ Because Wayte presented no evidence that this prosecution was motivated by his First Amendment activities, the district court's finding of selective prosecution was clearly erroneous.

Because Wayte made no initial showing of selective prosecution, he was not entitled to discovery of government documents. *See Ness,* 652 F.2d at 892. That access to the documents might have been helpful to

him does not in itself entitle him to discovery. *Id.* The government's refusal to comply with the discovery orders was justified.

## II.  *Presidental Proclamation 4771*

■ As an independent ground for dismissing the indictment, the district court held that Presidential Proclamation 4771, 45 Fed.Reg. 45,247 (1980), was void for noncompliance with the notice and comment requirement of 50 U.S.C.App. § 463(b). *Wayte,* 549 F.Supp. at 1389–91. Absent the Proclamation, there is no basis for criminal prosecution for nonregistration. *See United States v. Mersky,* 361 U.S. 431, 437–38, 80 S.Ct. 459, 463–464, 4 L.Ed.2d 423 (1960).

Section 463(b) provides in part:

[N]o regulation issued under [the Selective Service] Act shall become effective until the expiration of thirty days following the date on which such regulation has been published in the Federal Register. After the publication of any regulation and prior to the date on which such regulation becomes effective, any person shall be given an opportunity to submit his views to the Director on such regulation, but no formal hearing shall be required on any such regulation.

50 U.S.C.App. § 463(b). It does not mention presidential proclamations.

Wayte argues that Congress intended the term "regulation" in that section to refer to presidential proclamations as well as Selective Service regulations. The force of that argument is diluted by Congress' conjunctive use of the terms "regulation" and "proclamation" elsewhere in the Selective Service Act.

Section 453 of the Selective Service Act provides that men shall register at that time and place and in that manner "determined by *proclamation* of the President *and* by *rules and regulations* prescribed hereunder." 50 U.S.C.App. § 453(a) (emphasis added). In light of Congress' reference to proclamations and regulations in that section, its § 463(b) reference to regulations

alone indicates that proclamations do not fall within the notice and comment requirement.

The confusing legislative history of the section does not warrant a departure from the plain meaning of the statutory language. *See SEC v. Mount Vernon Memorial Park,* 664 F.2d 1358, 1364 (9th Cir.), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982). Section 463(b) does not apply to presidential proclamations.

### III. *Selective Service Regulations*

■ Wayte argues that dismissal was proper because the Selective Service registration regulations were issued in violation of a Selective Service requirement that a 60-day notice and comment period be provided. The regulations, 32 C.F.R. Part 1615 (1980), were issued in final form after a 32-day notice and comment period. *See* 45 Fed.Reg. 40,577 (1980).

The requirement of a 60-day notice and comment period was imposed by the Director of Selective Service in a report published November 1, 1978. 43 Fed.Reg. 50,-980, 50,981 (1978). The report provided that "in accord with Executive Order 12044, at least 60 days will be allowed for comment on proposed regulations in the future." *Id.* Executive Order 12044 prescribed a 60-day notice and comment period for federal agency regulations, but exempted military regulations. 43 Fed.Reg. 12,661 (1978).

The district court rejected Wayte's challenge to the Selective Service regulations, holding that Executive Order 12044 was not based on statutory authority and was judicially unenforceable. *Wayte,* 549 F.Supp. at 1386–89. Wayte does not argue that Executive Order 12044 is enforceable, but contends that the Selective Service 60-day requirement was adopted independently. We disagree.

The district court impliedly found that the Selective Service requirement was based on Executive Order 12044, not on independent statutory authority. The re-

quirement was proposed on April 11, 1978, 43 Fed.Reg. 15,211, less than three weeks after the Executive Order was issued on March 23. *Id.* at 12,661. The language of the Selective Service report indicates that it was conforming to the Executive Order. There is no reason to believe that it was based on statutory authority.

We conclude that the 60-day Selective Service requirement was an effort to conform to Executive Order 12044. It is judicially unenforceable for the reasons stated in the district court's opinion. *Wayte,* 549 F.Supp. at 1386–89.

The judgment is REVERSED.

SCHROEDER, Circuit Judge, dissenting.

I respectfully dissent from the majority's holding that Wayte failed to establish that he was selected for prosecution because of his exercise of first amendment rights.

The initiation of Wayte's prosecution was a part of the government's deliberate policy to prosecute only men who wrote to the government to report their failure to register for the draft, or men whom third parties reported as having disobeyed the registration requirement. This enforcement policy was directed toward persons whom the government viewed as "vocal" non-registrants as opposed to "quiet" non-registrants. 549 F.Supp. at 1379, 1384. The policy thus was designed to punish only those who had communicated their violation of the law to others.

The policy was successful because, as the record here shows, only vocal non-registrants had been indicted at the time this prosecution began. Thousands of others who also violated the law were not prosecuted. There thus is no question, as the majority recognizes, that Wayte made the required showing that similarly situated violators were not prosecuted. Nor, in my view, is there any doubt that Wayte established that the prosecution was impermissibly based upon his exercise of first amendment rights.

This court has already held that an enforcement procedure focusing solely upon vocal offenders is inherently suspect. *United States v. Steele*, 461 F.2d 1148, 1152 (9th Cir.1972). The Seventh Circuit has similarly held that where a vocal dissenter appears to have been singled out for prosecution, the government must accept the burden of proving nondiscriminatory enforcement. *United States v. Falk*, 479 F.2d 616, 621 (7th Cir.1973) (en banc). The key question before the district court in this case, therefore, was whether the government sufficiently explained the policy by showing it was motivated by other concerns. The district court found that the government failed to make such a showing, after carefully reviewing and evaluating all of the evidence which was submitted by both sides. Its findings must be upheld unless clearly erroneous, and the majority fails to demonstrate that they were.

The majority accepts the government's argument that its selective policy was justified by its need to establish wilfulness and by its inability to find other violators. Neither theory is plausible.

This is not a case where the offender's statements were necessary or even useful to establish wilfulness. It therefore is not controlled by *United States v. Taylor*, 693 F.2d 919 (9th Cir.1982). There, we affirmed the district court's finding that defendants had failed to establish selective prosecution for participation in an illegal strike. We pointed out that the failure to report to work alone was "an equivocal act" which could have had an innocent explanation. 693 F.2d at 923 n. 5. Failure to register for the draft might similarly be explained by ignorance of the requirement. But this case is unlike *Taylor* because the undisputed facts show that before initiating prosecution, the government wrote to each suspected violator offering him a chance to comply with the law. Only those who ignored this warning were prosecuted. Thus *Taylor* hardly compels reversing the district court's findings in this case, for here the government had a method, independent of suspected violators' communications, for excluding from prosecution persons who might have an innocent explanation for failure to register.

This also is not a case in which the government showed that financial or other constraints dictated limiting its enforcement policy to vocal violators. *See United States v. Wilson*, 639 F.2d 500, 505 (9th Cir.1981). Even assuming that budgetary considerations could justify a policy restricting prosecution to those who exercise first amendment rights, no such justification was shown. Rather, as the district court pointed out, quiet non-registrants could easily have been traced. The district court noted that a law student armed only with a telephone was able to obtain lists, from several randomly chosen states, of persons legally required to register; those lists could have been compared with the government's list of actual registrants to locate violators. 549 F.Supp. at 1381 & n. 6. The availability of alternative enforcement methods is borne out by the fact that the government has now implemented a system for identifying quiet non-registrants. But the present existence of such a system cannot excuse its absence at the time this defendant's prosecution was instituted. *Cf. United States v. Stout*, 601 F.2d 325, 328 (7th Cir.), *cert. denied*, 449 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979) (prosecution of vocal violator permissible so long as other violators prosecuted as well).

The effect of the majority's opinion is to permit the government to prosecute a citizen because he has spoken out rather than because he has violated the law. The result weakens our indispensible but fragile freedom to express unpopular ideas.

I would affirm the district court.