**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mark Alden SCHMUCKER,
Defendant-Appellant.**

**No. 82–3701.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 7, 1983.

Decided Nov. 25, 1983.

William T. Whitaker, Whitaker & Reilly, Elizabeth Reilly (argued), Akron, Ohio, for defendant-appellant.

J. William Petro, U.S. Atty., Gary D. Arbeznik, Asst. U.S. Atty., Joseph P. Schmitz, Asst. U.S. Atty. (argued), Cleveland, Ohio, for plaintiff-appellee.

Ralph Rudd, Robert H. Bonthius, Jr., American Civil Liberties Union of Cleveland Foundation, Inc., Cleveland, Ohio, Harrop Freeman, General Counsel, CCCO, Cornell Law School, Ithaca, N.Y., Jon Landau, CCCO–Western Region, San Francisco, Cal., Peter Goldberger, Villanova Law School, Villanova, Pa., James H. Feldman, Jr., CCCO–National Office, Philadelphia, Pa., for amicus curiae for defendant-appellant.

Before MERRITT, Circuit Judge, PHILLIPS, Senior Circuit Judge, and SPIEGEL,* District Judge.

MERRITT, Circuit Judge.

In this direct criminal appeal, we address only this issue: Did the District Court err in denying the defendant an evidentiary hearing to determine whether he was indicted for failure to register for the draft because of his exercise of first amendment rights. We reverse and remand for the evidentiary hearing requested.

## I.

Under the terms of Presidential Proclamation 4711, issued by President Jimmy Carter on July 2, 1980, males like the defendant residing in the United States, born in the calendar year 1960, were required to register with the Selective Service during the period July 21–26, 1980. The defendant, who is concededly a sincere Mennonite, mailed to the Selective Service a letter in August, 1980, advising the government of his intention not to register for the draft and objecting to the registration. He explained that registering would violate his religious convictions. He included his name, current and permanent address, and his age eligibility. He rejected efforts by the Federal Bureau of Investigation and a government attorney to persuade him to register.

The Grand Jury returned a one-count indictment charging that defendant knowingly and willfully failed, evaded, and refused to submit to registration, in violation of 50 U.S.C.App. §§ 453 and 462. On October 5, 1982, the jury returned a verdict of guilty.

■ Defendant assigns many errors in the conduct of his trial, including the claim that the District Court refused to conduct an evidentiary hearing on his claim that the government abridged his rights of free speech and religious free exercise by prosecuting only those persons who both (a) refused to register *and* (b) publicly expressed disagreement with the draft registration law. We conclude that defendant Schmucker is entitled to a hearing on his charge of selective prosecution. Accordingly, we reverse.

## II.

Defendant claims that hundreds of thousands of young men have not registered but that only those who have publicly disagreed with the registration law have been prosecuted. The government responds that no constitutional violation has occurred because the government may validly select for prosecution only protestors who call attention to themselves by publicly confessing their failure to register. The government argues that the District Court, therefore, correctly denied the defendant's motion for an evidentiary hearing on this issue because his claim of selective prosecution does not state a valid defense, even assuming the facts alleged to be true.

■ In *United States v. Hazel,* 696 F.2d 473, 474 (6th Cir.1983), we recently set out a two part test governing when an indictment must be dismissed on grounds of selective prosecution. Under the test an in-

---

* The Honorable S. Arthur Spiegel, Judge, United States District Court for the Southern District of Ohio, sitting by designation.

dictment must be dismissed if (1) the defendant has been "singled out" while other similarly situated violators are left untouched, and (2) the defendant's selection for prosecution was "based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights." A defendant is entitled to an evidentiary hearing if he makes a preliminary showing that there is a legitimate issue concerning the government's conduct under this standard.

■ Although prosecutorial discretion is very broad under our system, *see Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Confiscation Cases,* 74 U.S. (7 Wall.) 454, 457, 19 L.Ed. 196 (1868) ("public prosecutions ... within exclusive discretion of" prosecutor), it is obvious that the government cannot selectively enforce a law by prosecuting only Republicans, or only Caucasians, or only Southerners who violate the law. For the government cannot adopt a prosecution policy which, if adopted by Congress as a statute, would be unconstitutional. The first issue before us then is whether the government may prosecute only those who publicly express their conscientious refusal to obey the registration law while leaving aside all who engage in covert refusal to obey and unadvertised evasion of the law? If the answer to that question is no, the second issue is whether we should require an evidentiary hearing on the present record.

### III.

The government seems to agree for purposes of argument that the defendant may be able to show at an evidentiary hearing that prosecution is limited to dissenters who publicly confess their resistance to the registration law. The defendant claims, and apparently the government does not deny, that of the approximately half million young men who have failed to register for the draft, only thirteen had been indicted by November, 1982, each of whom had expressed his opposition to the law by letter to the government or public speech. Moreover, on March 19, 1982, Mr. Lawrence

Lippe, Chief of the General Litigation and Legal Advice Section of the Criminal Division of the Department of Justice, wrote a memorandum to Mr. D. Lowell Jensen, Assistant Attorney General in charge of the Criminal Division, describing the government's prosecutorial policy in these cases as a "passive enforcement" policy based on "self reporting." He says the group of "self reporters" consists of Mennonites and "others with religious or moral objections" and "vocal proponents of nonregistration." Mr. Lippe advised his superior that the "present scheme" of prosecution of only "the vocal nonregistrant will undoubtedly result in allegations that the prosecution is brought in retribution for the nonregistrant's exercise of his first amendment rights."

The question before us then is whether a prosecutorial policy violates the first amendment if it is directed solely at "the vocal non-registrant" who openly objects to the law on religious, moral or political grounds. If so, the defendant is entitled to an evidentiary hearing in order to see if he can prove his allegations. If not, no evidentiary hearing is necessary.

### IV.

■ A prosecutorial policy so limited clearly violates the first amendment. It selects for prosecution only those who speak out against the law. It selects people based on their expression of beliefs and the strength of their convictions. It excludes, and therefore rewards, thousands who engage in covert noncompliance and evasion of the law, including all those who would confess their violation if sought out and interviewed. It discourages dissenters from expressing their criticisms of government policy.

The government's main argument is that the defendant has failed to establish that his selection "was based on an impermissible criterion." It argues that although the defendant "conjectures that the decision to prosecute him was deliberately based on the exercise of his first amendment rights, the record clearly demonstrates that the appel-

lant has been prosecuted simply because he took it upon himself to report his own criminal misconduct to the Selective Service and has, since the time of his incriminating correspondence to the government, rejected the various opportunities extended to him to register and thereby avoid criminal liability." This argument in turn depends on the acceptance of the government's argument that the defendant's letter "was not simply an exercise of the right to petition the government to protest perceived wrongs." The letter was, in addition, an unequivocal confession of the commission of a crime which virtually invited the initiation of criminal prosecution. (Govt. Brief pp. 37–38.)

■ The trouble with this prosecutorial selection distinction is that a law punishing only draft nonregistrants who publicly confess by vocalizing their disagreement with the government's policies would violate the principle that "Congress shall pass no law abridging free speech." Like the Alien and Sedition Acts, such a law visits punishment on people solely because they have expressed rather than remained silent about their opposition to the government. It is no less a violation of the first amendment for the Executive Branch to give the draft registration law this construction for purposes of prosecution. As Professor Tribe has noted, "in the very controversy over the Alien and Sedition Acts . . . a powerful theory of first amendment freedoms first crystallized . . . [viz.] that government lacks constitutional power to silence its critics." L. Tribe, *American Constitutional Law* § 12–12, at 632 (1978).

■ The government is correct that it can validly pass a law prohibiting fraud and libel based on speech and may perhaps be able to limit prosecutions generally or in certain classes of cases to those involving people who have made confessions. Such laws, though punishing speech, are content neutral. The government may not, however, limit its punishment in fraud, libel, and confession cases to only those cases in which the defendant criticizes the government and its policies. That standard is not content neutral. *See generally Oyler v. Boles, supra; Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Similarly, a law is not content neutral that limits draft prosecutions to nonregistrants who "vocalize" their religious, moral or political objections to the government. The government lacks the power to adopt a stated policy of prosecuting people who publicly confess their failure to register in confessions which criticize government policy.

■ A government's prosecution policy must be content neutral unless there are compelling justifications. In *Carey v. Brown,* 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980), in striking down a state statute that generally barred picketing of residences or dwellings but did not prohibit peaceful labor picketing of a place of employment, the Supreme Court declared that "[w]hen government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." *Id.* at 461–62, 100 S.Ct. at 2290–91. *See also Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981); *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In *United States v. Falk,* 479 F.2d 616, 623 (7th Cir. 1973) (en banc), the Court of Appeals applied similar reasoning to a selective prosecution case when it concluded that "it is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups . . . by selective enforcement of a broad prohibiting statute." *Quoting Cox v. Louisiana,* 379 U.S. 536, 557–58, 85 S.Ct. 453, 465–66, 13 L.Ed.2d 471 (1965). *See also United States v. Steele,* 461 F.2d 1148 (9th Cir.1972).

Although the government argues in the instant case that it sought to prosecute first those young men who brought attention to themselves by confessing either to the

government or in public their failure to register, defendant Schmucker's letter to the Selective Service—and apparently the "confessions" of the other defendants as well—contained more than the mere statement that "I have broken the law." The defendant has alleged and sought to present evidence to the District Court which suggests that the government prosecuted through its "passive enforcement" system only young men who made confessions through their criticisms of governmental policy.

The fact that criticisms of governmental policy may be accompanied by or construed as confessions does not make such criticisms any less an exercise of first amendment rights. As Justice Harlan warned in *Cohen v. California,* 403 U.S. 15, 26, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284 (1971) (invalidating under first amendment a state prosecution for disturbing peace by wearing jacket bearing words "Fuck the Draft"), "we cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process. Indeed, governments might soon seize upon the censorship of particular words as a convenient guise for banning the expression of unpopular views." Similarly in the present case, the defendant claims—with some support in the record—that the government is forbidding criticisms of itself under the guise of prosecuting a form of confessional words.

*Cohen* is analogous to the instant case. There the prosecutors argued that the slogan was obscene and contained "fighting" words and therefore was not entitled to protection. The accused argued that the slogan had a political meaning, that he used the obscenity to dramatize that meaning. The court held that the two characterizations merged and that the context of the prosecution suggested a strong inference that the state brought the case in part because of the political meaning of the slogan. This case lends itself to similar analysis. The prosecution argues "confession,"

and the accused argues political and religious "protest."

The government contends that we should follow the decision in *United States v. Wayte,* 710 F.2d 1385 (9th Cir.1983), which held that a young man who publicly expressed his refusal to register had not been selectively prosecuted. The majority on the Ninth Circuit panel concluded that defendant Wayte, who presented evidence of selective prosecution similar to that presented by the defendant here, had "not shown that he was selected from the larger group because of his exercise of his constitutional rights." *Id.* at 1387. The *Wayte* court upheld as valid the government's explanations that its system was necessary because "(1) the identities of other violators were not known and (2) the violators who [publicly] expressed their refusal to register made clear their willful violation of the law." *Id.* at 1388.

The *Wayte* court's blanket rejection of the trial court's factual findings of selective prosecution does not impress us. We are persuaded by the contrary opinion in *United States v. Falk, supra,* and by Judge Schroeder's thoughtful dissent in *Wayte.* In *Falk,* the Seventh Circuit Court of Appeals *en banc* concluded that the defendant's presentation of evidence regarding his prosecution for failure to possess a registration card was sufficient to shift the burden to the government to prove non-discriminatory enforcement of the law and that the defendant was entitled to be heard on his claim that the prosecution had been initiated to punish the defendant's and to chill others' exercise of First Amendment freedoms. The *Falk* court's review of the law governing prosecutorial discretion led that court to conclude that

> just as discrimination on the basis of religion or race is forbidden by the Constitution, so is discrimination on the basis of the exercise of protected First Amendment activities, whether done as an individual or, as in this case, as a member of a group unpopular with the government.

479 F.2d at 620.

Citing *Falk,* Judge Schroeder in her dissent in *Wayte* noted that "where a vocal

dissenter appears to have been singled out for prosecution, the government must accept the burden of proving nondiscriminatory enforcement." 710 F.2d at 1390. Judge Schroeder also emphasized that the District Court in *Wayte* had not made any clearly erroneous findings of fact regarding the selective prosecution issue and that "the effect of the majority's opinion is to permit the government to prosecute a citizen because he has spoken out rather than because he has violated the law. The result weakens our indispensable but fragile freedom to express unpopular ideas." *Id.*

In accordance with the reasoning expressed in *Cohen v. California* and by the Seventh Circuit in *Falk* and by Judge Schroeder in *Wayte,* we conclude that defendant Schmucker is entitled to a full evidentiary hearing on his claim that the federal government selectively prosecuted him because of his opposition to registration based on his exercise of first amendment rights.

Accordingly, it is so ordered. We retain jurisdiction over the other issues raised on this appeal, pending the outcome of the evidentiary hearing.