**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mark Arden SCHMUCKER,**
**Defendant-Appellant.**

No. 86–3742.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 17, 1987.

Decided April 3, 1987.

Rehearing Denied May 6, 1987.

Merritt, Circuit Judge, filed a concurring opinion.

William T. Whitaker, Elizabeth Reilly (argued) University of Akron, School of Law, Akron, Ohio, Dale A. Baich, Cleveland, Ohio, for defendant-appellant.

Gary D. Arbeznik, Joseph P. Schmitz (argued), Asst. U.S. Attys., Cleveland, Ohio, for plaintiff-appellee.

Before MERRITT, WELLFORD and MILBURN, Circuit Judges.

MILBURN, Circuit Judge.

Defendant-appellant Mark Arden Schmucker appeals his conviction for willfully failing to register with the Selective Service System in violation of 50 U.S.C. App. §§ 453, 462. Defendant's principal arguments are that requiring him to register impermissibly burdened his rights under the free exercise clause of the First Amendment, and that he was entitled to discovery and an evidentiary hearing on his claim that he was selectively prosecuted on the basis of his religious beliefs. Finding defendant's arguments without merit, we affirm.

## I. FACTS

President Carter initiated registration by issuing Presidential Proclamation 4771 on July 2, 1980. Male persons residing in the United States who were born in the calendar year 1960 were required to register with the Selective Service during the period of July 21 through July 26, 1980. Two weeks after the expiration of this period, defendant, who was born on October 4, 1960, mailed to the Selective Service a letter advising the government of his intention to "avoid participation in the conscription process by not registering." Defendant acknowledged that he had violated the law, stating that his "Christian faith" compelled him not to register or "participate, in any manner, with the Armed Forces."

On January 7, 1982, President Reagan announced the institution of a national grace period which permitted individuals who had failed to comply with the registration requirement to register without fear of criminal prosecution. Defendant declined to avail himself of this opportunity, and, on June 22, 1982, defendant was interviewed by the Federal Bureau of Investigation. Defendant intimated that he had refused to comply with the registration requirement for religious reasons and that, in not registering with the Selective Service, "he would cause the United States Government to be delayed in mobilizing their armed forces since they would have to take some time to handle his particular case."

One week after this interview, Assistant United States Attorney Gary D. Arbeznik unsuccessfully urged defendant to reconsider his decision to resist registration. Mr. Arbeznik sought authority from the Department of Justice to decline prosecu-

tion primarily because defendant was a Mennonite seminary student. The Department of Justice refused to decline prosecution, explaining that religious beliefs could not be a reason either for prosecution or refusing to do so. The case was then presented to a federal grand jury which returned a one-count indictment charging that defendant knowingly and willfully failed to register in violation of 50 U.S.C. App. §§ 453, 462.

Defendant moved to dismiss the indictment, claiming that he and seven other nonregistrants had been unfairly singled out for prosecution because they expressed their opposition to the registration requirement. In support of his motion, defendant submitted affidavits from five indicted nonregistrants, all of whom indicated that they had written to the Selective Service prior to the time of their indictment to voice their objection to the resumption of draft registration. In response, the government submitted affidavits from individuals who had helped devise or implement the government's so-called "passive enforcement" policy under which the government selected for prosecution only those who reported themselves or were reported by others as having violated the registration requirement. The district court rejected defendant's claim of selective prosecution without holding an evidentiary hearing, finding that defendant had failed to present any evidence which tended to show that he was singled out for prosecution on the basis of impermissible considerations.

At trial, defendant was permitted to testify at length, and without restriction, concerning his reasons for his refusal to comply with the registration requirement. Defendant acknowledged that "he knew he was breaking the law," explaining that his refusal to register was a product of his religious beliefs. "[B]y registering I am facilitating the efficient mobilization of our Armed Forces, and I can't say that I feel it's right for me to help our country in any way prepare for war and for the killing and the destruction that war entails." Defendant made it clear that his religious beliefs precluded him from registering and thereafter seeking classification as a conscientious objector because even this limited acquiescence would "make the system operate more smoothly and more efficiently, thus allow [sic] the country to prepare for war more easily." While defendant was permitted to explain the religious basis for his refusal to register, the district court excluded the testimony of other defense witnesses concerning defendant's religious motivation. The district court also instructed the jury that defendant's motive "was immaterial except insofar as evidence of motive may aid determination of state of mind or intent. One may not commit a crime and be excused from criminal liability because he desired or expected that ultimate good would result from his criminal act." The jury returned a verdict of guilty, and defendant was sentenced to three years probation on the condition that he perform two years of community service.

On prior appeal, this court reversed defendant's conviction and remanded the case to the district court for "a full evidentiary hearing on [defendant's] claim that the federal government selectively prosecuted him because of his opposition to registration based on his exercise of First Amendment rights." *United States v. Schmucker*, 721 F.2d 1046, 1052 (6th Cir.1983). This court, however, declined to reach the other assignments of error advanced by defendant, electing to retain jurisdiction over the remaining issues pending the outcome of the evidentiary hearing. Following the denial of its petition for rehearing, the government petitioned the Supreme Court for a writ of certiorari. While the government's petition was pending, the Court, in *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), considered and rejected a selective prosecution claim similar to that advanced by defendant. The Court then vacated this court's judgment and remanded the matter to this court for "further consideration" in light of the *Wayte* decision. *United States v. Schmucker*, 471 U.S. 1001, 105 S.Ct. 1860, 85 L.Ed.2d 155 (1985). This court, in turn, remanded the case to the district court for reconsideration in light of the Supreme

Court's decision in *Wayte*. *United States v. Schmucker*, 766 F.2d 1582 (6th Cir.1985).

On remand, defendant renewed his request for discovery and an evidentiary hearing on his claim of selective prosecution. Defendant reiterated his original contention that he was singled out for prosecution because of his express objections to the registration requirement. In addition, defendant asserted that he was singled out for prosecution "at least partially because of his Mennonite beliefs." The district court denied defendant's request, finding that the evidence presented failed to establish a prima facie case of selective prosecution or raise a reasonable doubt as to the government's purpose in bringing criminal charges.

Defendant filed the instant appeal and moved to consolidate this appeal with his prior appeal. By order of November 7, 1986, this court granted defendant's motion to consolidate the two appeals.

## II. CONSTITUTIONAL CHALLENGES

### A. *Free Exercise Clause*

◼ Defendant argues that the requirement of Selective Service registration impermissibly burdens his rights under the free exercise clause of the First Amendment. In analyzing defendant's free exercise claim, we must weigh three factors: (1) the magnitude of the burden upon defendant's exercise of religion: (2) the existence of a compelling state interest justifying that burden; and (3) the extent to which accommodation of defendant would impede the state's objectives. *United States v. Lee*, 455 U.S. 252, 256–60, 102 S.Ct. 1051, 1054–56, 71 L.Ed.2d 127 (1982); *Johnson v. Robison*, 415 U.S. 361, 384–85, 94 S.Ct. 1160, 1174, 39 L.Ed.2d 389 (1974); *Gillette v. United States*, 401 U.S. 437, 461–62, 91 S.Ct. 828, 842, 28 L.Ed.2d 168 (1971). "[T]he balance depends upon the cost to the government of altering its activity to allow the religious practice to continue unimpeded versus the cost to the religious interest imposed by the government activity." *Grosz v. Miami Beach*, 721 F.2d 729, 734 (11th Cir.1983), *cert. denied*, 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984).

◼ While defendant objects to war and participation in military service on religious grounds, the burden of registration upon defendant's exercise of religion is minimal. "Registration requires no training, service or combat" and "is physically (and arguably morally) less intrusive than the draft itself." *Detenber v. Turnage*, 701 F.2d 233, 234 (1st Cir.1983); *see also United States v. Bertram*, 477 F.2d 1329, 1330 (10th Cir.1973) (registration "does not infringe or curtail religious freedom"); *United States v. Koehn*, 457 F.2d 1332, 1334 (10th Cir.1972) (defendant failed to "demonstrate how his religious beliefs [were] prejudiced or compromised by the single act of registration"); *Garman v. United States Postal Service*, 509 F.Supp. 507, 509 (N.D. Ind.1981) (registration " 'does not infringe or curtail religious freedom' ") (quoting *Bertram*, 477 F.2d at 1330). Moreover, registration only postpones assertion of religious objections until after an induction order is issued.

The government, on the other hand, has a compelling interest in being able to institute conscription quickly should it prove necessary, and registration is a crucial component of the conscription process. *See Wayte*, 470 U.S. at 612, 105 S.Ct. at 1533; *Rostker v. Goldberg*, 453 U.S. 57, 68, 75, 101 S.Ct. 2646, 2653, 2657, 69 L.Ed.2d 478 (1981). "Registration is the first step 'in a united and continuous process designed to raise an army speedily and efficiently', ... and Congress provided for reactivation of registration in order to 'provid[e] the means for the early delivery of inductees in an emergency.' " *Rostker*, 453 U.S. at 75, 101 S.Ct. at 2657 (citation omitted) (quoting *Falbo v. United States*, 320 U.S. 549, 553, 64 S.Ct. 346, 348, 88 L.Ed. 305 (1944), and S.Rep. No. 826, 96th Cong.2d Sess., *reprinted in* 1980 U.S. Code Cong. & Admin. News 2612, 2650). Registration may not be "divorce[d] ... from the military and national defense context," *id.* 453 U.S. at 68, 101 S.Ct. at 2653, and, viewed in its proper context, must be considered a "prelude to a draft in a time of

national emergency," *id.* at 75, 101 S.Ct. at 2657. "Few interests can be more compelling than a nation's need to ensure its own security." *Wayte,* 470 U.S. at 611, 105 S.Ct. at 1533.

■ Defendant contends that the free exercise clause obligates the government to accommodate his religious beliefs by evaluating claims for conscientious objector status prior to, or immediately after, registration. However, the government has accommodated those individuals who are opposed to war and military service on religious grounds by providing for their exemption from military service. Any person "who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form" shall not "be subject to combatant training and service in the armed forces." 50 U.S.C.App. § 456(j). The Selective Service regulations defer classification of conscientious objectors until after issuance of an induction order, recognizing that, in the absence of ongoing conscription, classification would unduly burden the Selective Service by requiring the filing, processing and adjudication of unripe claims. 32 C.F.R. §§ 1633.3, 1636.2; 46 Fed.Reg. 56,434 (1981). "[T]he filing of a claim ... in advance of induction, would only serve to encumber the System with the responsibility for processing claims which may not even prove pertinent to the registrant's requested classification at the time of induction." 46 Fed.Reg. at 56,436.

Furthermore, section 456(j) embodies the method of accommodation chosen by Congress, whose judgment in this regard is entitled to substantial deference. "Perhaps there are other ways in which Congress could have struck the balance between conscience and the needs of the Selective Service System, but at some point courts must defer to the Congressional judgment concerning what is necessary and appropriate." *United States v. Boardman,* 419 F.2d 110, 113 (1st Cir.1969), *cert. denied,* 397 U.S. 991, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970); *see also Lee,* 455 U.S. at 259, 102 S.Ct. at 1056 (Court noted that while religious beliefs can be accommodated, there is a point where accommodation would infringe upon the operating latitude of the legislature); *Rostker,* 453 U.S. at 64–65, 101 S.Ct. at 2651 (judicial deference to congressional judgments is particularly appropriate where issues of national defense and military affairs are involved). "[T]he Selective Service Act makes adequate provision for the protection of persons who by reason of religious training and belief are conscientiously opposed to participation in war, ... but they are required to register in order to claim exemption from combat duty or from noncombatant service." *Gara v. United States,* 178 F.2d 38, 40 (6th Cir.1949), *aff'd by an equally divided court,* 340 U.S. 857, 71 S.Ct. 87, 95 L.Ed. 628 (1950).

**B.** *Selective Prosecution*

■ Defendant argues that he is entitled to discovery and an evidentiary hearing on his claim that the government selected him for prosecution on the basis of his religious beliefs. A defendant, in order to obtain a hearing on the issue of selective prosecution, must establish, at least prima facie, that he was singled out for prosecution on the basis of an impermissible consideration such as race, religion, or exercise of constitutional rights. *See United States v. Hazel,* 696 F.2d 473, 474 (6th Cir.1983); *United States v. Kerley,* 787 F.2d 1147, 1148 (7th Cir.1986). A defendant must present facts which tend to show not only that the government's enforcement policy had a discriminatory effect, but also that it was motivated by a discriminatory purpose. *See Wayte,* 470 U.S. at 608, 105 S.Ct. at 1531; *Kerley,* 787 F.2d at 1149. A defendant may, however, be entitled to discovery on the issue of selective prosecution if he introduces "'some evidence tending to show the existence of the essential elements of the defense.'" *United States v. Mitchell,* 778 F.2d 1271, 1277 (7th Cir.1985) (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)); *see also Kerley,* 787 F.2d at 1150.

■ Defendant's attempt to demonstrate that the passive enforcement policy had a discriminatory impact upon religious opponents of registration is based on the unsup-

ported allegation that religious objectors constituted a "large percentage" of the defendants indicted. However, defendant has failed to point to any evidence that the government prosecuted religious objectors who did not report themselves or were not reported by others. Defendant has similarly failed to point to any evidence that the government did not prosecute reported nonregistrants who were not known to be religious objectors. As the Court found in *Wayte*, individuals prosecuted under the passive enforcement policy were selected because they reported themselves or were reported by others and thereafter persisted in their unlawful refusal to register. 470 U.S. at 609, 105 S.Ct. at 1532.

Defendant's attempt to demonstrate that the government purposely discriminated against religious objectors is based almost entirely on the fact that government officials responsible for enforcement of the registration requirement recognized that the enforcement scheme would result in prosecution of religious objectors, and proceeded to prosecute defendant, even after learning of his religious affiliation. Purposeful discrimination is not, however, established by merely demonstrating that the government was aware that the enforcement scheme would result in prosecution of religious objectors or by demonstrating that the government was aware of defendant's religious affiliation. " ' "[D]iscriminatory purpose" implies more than ... intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.' " *Wayte*, 470 U.S. at 610, 105 S.Ct. at 1532 (quoting *Personnel Administrator v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)). The refusal of the Department of Justice to accept defendant's religious beliefs as a ground for declining prosecution does not demonstrate that defendant was prosecuted "because of" his religion, but merely that he was treated the same as all other reported nonregistrants.

While defendant also asserts that discriminatory purpose is evidenced by the government's refusal to defer prosecution until an active enforcement system could be implemented, *Wayte* found that "[p]assive enforcement was the only effective interim solution available to carry out the Government's compelling interest" in providing for the national defense. 470 U.S. at 613, 105 S.Ct. at 1534. Defendant's assertion that the government deliberately failed to pursue active enforcement as an alternative to the passive scheme is simply "not viable" after *Wayte*. *Kerley*, 787 F.2d at 1149. Absent any evidence that he was prosecuted "because of" his religion, defendant is not entitled to discovery or an evidentiary hearing. *See Wayte*, 470 U.S. at 610, 105 S.Ct. at 1532; *Kerley*, 787 F.2d at 1150–51; *United States v. Wayte*, 710 F.2d 1385, 1388 (9th Cir.1983), *aff'd*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

### C. *Equal Protection*

■ Defendant argues that the government's failure to exempt from registration religious objectors who would be exempt from combat duty under the conscientious objector provisions violates equal protection since other noncombatants, namely women and males with severe mental deficiencies, are exempt from registration. There are, however, important differences between conscientious objectors and women and mentally deficient males which provide a basis for different treatment. The purpose of registration is to develop a pool of potential combat troops, and women are exempt from registration because they are ineligible for combat. *Rostker*, 453 U.S. at 77–79, 101 S.Ct. at 2658–59. Males with mental deficiencies severe enough to require appointment of a guardian, and to preclude appearance in public without trauma or hardship, are also exempt from registration because they will never prove eligible for combat.

Whereas women and males with severe mental deficiencies can be readily identified as persons ineligible for combat, "conscientious objector claims turn on the resolution of factual questions related to the nature of the registrant's beliefs concerning

war, ... the basis of the objection in conscience and religion, ... and the registrant's sincerity." *McGee v. United States*, 402 U.S. 479, 490, 91 S.Ct. 1565, 1571, 29 L.Ed.2d 47 (1971) (citations omitted). Since women and males with severe mental impairments are not similarly situated to religious objectors, the failure to exempt religious objectors from registration does not violate any right of equal protection. *See Rostker*, 453 U.S. at 78–79, 101 S.Ct. at 2658–59.

## III. STATUTORY AND REGULATORY CHALLENGES

### A. *Immediate Classification*

■ Defendant argues that the failure of the Selective Service to classify conscientious objectors immediately after registration violates 50 U.S.C.App. § 454(a), which provides that registrants must be classified "as soon as practicable" after registration. However, the present system, which places all registrants in a holding classification, satisfies the requirements of section 454(a). Congress, in requiring classification "as soon as practicable" "did not intend to require a meaningless classification system when there was no present existing draft.... [I]t is clear that there is no present need for classification and without statutory authorization and funding for such an effort, immediate classification is not practicable." *Ford v. Rostker*, No. C80–3151–SW, slip op. at 4–5 (N.D.Cal. September 13, 1982).

### B. *Presidential Proclamation 4771*

■ Defendant argues that the indictment should have been dismissed because Presidential Proclamation 4771 is void for noncompliance with the notice and comment requirement of 50 U.S.C.App. § 463(b). Section 463(b) provides that "[n]o regulation issued under this Act shall become effective until the expiration of thirty days following the date on which such regulation has been published in the Federal Register." Although the Act provides that registration may be effectuated by both a Presidential Proclamation and implementing regulations, section 463(b)

subjects only "regulations" to the thirty-day notice requirement. Section 453(a) of the Act provides that men shall register "at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder." 50 U.S.C.App. § 453(a). "In light of Congress' reference to proclamations and regulations in that section, its § 463(b) reference to regulations alone indicates that proclamations do not fall within the notice and comment requirement." *Wayte*, 710 F.2d at 1388–89; *see also United States v. Eklund*, 733 F.2d 1287, 1303 (8th Cir.1984), *cert. denied*, 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985). Had Congress intended Presidential proclamations to be subject to the notice and comment provisions, Congress, which had previously differentiated between regulations and proclamations, would have explicitly so provided.

### C. *Selective Service Regulations*

■ Defendant argues that the indictment should have been dismissed because regulations promulgated by the Selective Service, 32 C.F.R. § 1615 *et seq.*, thirty-two days after publication in the Federal Register, were issued in violation of a Selective Service requirement that a sixty-day notice and comment period be provided. The sixty-day notice and comment requirement was imposed by the Director of Selective Service in a report which provided that "in accord with Executive Order 12044, at least 60 days will be allowed for comment on proposed regulations in the future." 43 Fed.Reg. 50,980 & 50,981 (1978). Executive Order 12044 is an internal executive directive not based on any statutory authority and is judicially unenforceable. *Eklund*, 733 F.2d at 1303; *Wayte*, 710 F.2d at 1389.

## IV. ALLEGED TRIAL ERRORS

### A. *Voir Dire*

■ Defendant argues that the voir dire examination conducted by the district court failed to adequately explore the prospective jurors' attitudes and possible prej-

udices with regard to conscientious objectors and that the prospective jurors should have been asked certain questions submitted by defense counsel. Rule 24(a) of the Federal Rules of Criminal Procedure "gives the court very broad discretion on the conduct of the voir dire examination of prospective jurors." 2 C. Wright, *Federal Practice and Procedure* § 381, at 332 (1982); *see also United States v. Whitt*, 718 F.2d 1494, 1497 (10th Cir.1983); *United States v. Black*, 685 F.2d 132, 134 (5th Cir.) (per curiam), *cert. denied*, 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 518 (1982). "The purpose of the *voir dire* procedure is to enable the parties to obtain an impartial jury...." *Whitt*, 718 F.2d at 1496 (citations omitted); *see also* 12 C. Wright, *supra*, § 381, at 332. The district court's exercise of its broad discretion "will not be disturbed, absent a clear showing of abuse." *Whitt*, 718 F.2d at 1497; *see also Black*, 685 F.2d at 134.

The record discloses that the district court made sufficient inquiry of the prospective jurors to permit full disclosure of facts and circumstances which might indicate bias against defendant stemming from his opposition to war or military service. Prospective jurors were questioned at length about the nature and extent of their military service as well as that of their family members and were asked whether their experience or that of any family member would in any way affect their impartiality. Prospective jurors were further asked whether they or any family member belonged to an organization which supported draft registration or the military or were ever employed by the Selective Service or a local draft board. Finally, prospective jurors were asked whether they had any strong prejudices pro or con with respect to the draft or the requirement that men register which would affect their ability to impartially weigh the evidence. The district court's voir dire amply covered the issue of possible juror bias or prejudice, and the district court was well within its discretion in refusing to ask the jurors certain questions suggested by defense counsel. *See United States v. Brunty*, 701 F.2d 1375, 1378–79 (11th Cir.), *cert. denied*,

464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983); *United States v. Mattin*, 419 F.2d 1086, 1087–88 (8th Cir.1970).

## B. *Defendant's Motive*

Defendant argues that the district court improperly refused to permit defendant to present witnesses to explain and corroborate defendant's testimony that he failed to comply with the registration requirement for religious reasons. The overwhelming weight of authority is, however, that evidence of a defendant's motive for refusing to comply with Selective Service laws is irrelevant. *See United States v. Irwin*, 546 F.2d 1048, 1051 (3d Cir.1976); *Bertram*, 477 F.2d at 1330; *Boardman*, 419 F.2d at 114; *United States v. Owens*, 415 F.2d 1308, 1312 (6th Cir.1969), *cert. denied*, 397 U.S. 997, 90 S.Ct. 1138, 25 L.Ed.2d 406 (1970). "The court did not err in curtailing [defendant's] testimony as to the religious reasons for his failure to register. It was enough to allow him to state that his refusal was based on religion." *Bertram*, 477 F.2d at 1330; *see also Owens*, 415 F.2d at 1312.

Defendant also argues that the district court improperly failed to instruct the jury that "willfully" includes not only intent to violate the statute, but also a bad purpose or evil motive. The term "willfully" does not, however, require proof of any motive other than an intentional violation of a known legal duty. *See Irwin*, 546 F.2d at 1052; *Boardman*, 419 F.2d at 110. There is simply no requirement that bad purpose or evil motive be shown. *See Irwin*, 546 F.2d at 1052; *Boardman*, 419 F.2d at 114.

## V.

Accordingly, the judgment of the district court is AFFIRMED.

MERRITT, Circuit Judge, concurring.

In *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), a majority of the Supreme Court overruled my view that the defendant is entitled to an evidentiary hearing on his First Amend-

ment claims of selective prosecution as set out in my opinion for the Court in *United States v. Schmucker*, 721 F.2d 1046 (6th Cir.1983). *Wayte*, is a precedent binding on this Court. I therefore concur in the opinion of the Court on the issues controlled by *Wayte*. On the other issues, I concur in the opinion of the Court for the reasons stated in the Court's opinion.