**ENVIRONMENTAL DEFENSE FUND, INC., Plaintiff,**

v.

**Walter E. MASSEY, et al., Defendants.**

**Civ. A. No. 91–1068.**

United States District Court, District of Columbia.

Aug. 29, 1991.

As Corrected Oct. 1, 1991.

Peter Anders von Mehren, Washington, D.C., for plaintiff.

Beverly Sherman Nash, Dept. of Justice, Washington, D.C., for defendants.

MEMORANDUM

JOHN GARRETT PENN, District Judge.

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction and Defendants' Motion to Dismiss. Upon consideration of the motions, opposition thereto and the entire record, the Court concludes that plaintiff's motion for a preliminary injunction should be denied and defendants' motion to dismiss should be granted.

I

The following are the underlying facts in the present motions. On June 28, 1991,

plaintiff, Environmental Defense Fund ("EDF"), moved for a preliminary injunction seeking to enjoin the National Science Foundation ("NSF") from taking steps to incinerate food related waste and selected domestic waste after October 1, 1991, at NSF's McMurdo Station in the Antarctica. On July 22, 1991, defendants filed a motion to dismiss and an opposition to plaintiff's motion for a preliminary injunction. The Court heard oral argument on July 29, 1991.

EDF seeks to halt continued use of an interim incinerator after October 1, 1991, and to enjoin the operation of a permanent incinerator after October 1, 1991. EDF contends that NSF has not prepared the proper environmental analysis as required under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370a (1969), regulations of the Council on Environmental Quality ("CEQ"), 40 C.F.R. §§ 1500–1508 (1990), and Executive Order 12114 ("EO"), 44 Fed.Reg. 1957 (1979).

NSF filed a motion to dismiss contending that the case should be dismissed for lack of subject matter jurisdiction. NSF contends that the Court lacks subject matter jurisdiction for two reasons. First, NSF contends that NEPA does not apply to federal agency actions outside of the United States. Second, NSF contends that the Executive Order, which covers preparation of environmental analysis outside of the United States, does not create a cause of action.

The Court concludes that NEPA does not apply extraterritorially. Further, the Court concludes that Executive Order 12114 does not create a cause of action.

## II

▉ EDF contends that NEPA applies extraterritorially. EDF argues that this Court is compelled to conclude that NEPA applies to the Antarctica because of NEPA's statutory language, legislative history, the interpretation of NEPA's implementing agency, CEQ, and the applicable case law. EDF further contends that the doctrine first espoused in *Foley Bros. Inc. v. Filardo*, 336 U.S. 281, 69 S.Ct. 575, 93

L.Ed. 680 (1949), against the application of laws extraterritorially is inapplicable in the present action because application of NEPA to NSF's activities in Antarctica will not result in any clash with the laws of foreign nations or international discord.

NSF contends that the *Foley* doctrine prevents extraterritorial extension of NEPA to the Antarctica. Recently, the Supreme Court in *Equal Opportunity Employment Commission v. Arabian American Oil Co.*, — U.S. —, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) [hereinafter *Aramco* ], concluded that " 'legislation of Congress, unless contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.' " *Id.* 111 S.Ct. at 1230, *quoting Foley Bros. Inc.*, 336 U.S. at 285, 69 S.Ct. at 577. Further, Congress is "primarily concerned with domestic conditions" *Aramco*, 111 S.Ct. at 1230, and that to apply extraterritorially "the affirmative intention of the Congress [must be] clearly expressed." *Id.*

The Court cannot ferret out a clear expression of Congress' intention that NEPA should apply beyond the territorial jurisdiction of the United States. Rather, NEPA contends language such as "the human environment" *see* 42 U.S.C. § 4332(2)(C), "the worldwide and long-range character of environmental problems" *see id.* at § 4332(2)(F), and the purpose of NEPA is to "encourage productive and enjoyable harmony between man and his environment [and] to promote efforts which will prevent or eliminate damage to the environment and biosphere." *See id.* at § 4321.

While Congress may have selected broad language to describe NEPA's purpose, Congress failed to provide a clear expression of legislative intent through a plain statement of extraterritorial statutory effect. Therefore, this Court does not need to examine the legislative history in order to divine Congressional intent.

Finally, despite EDF's contentions, courts have not directly addressed whether NEPA applies extraterritorially. *See Natural Resources Defense Council, Inc. v. Nuclear Regulatory Comm'n*, 647 F.2d 1345 (D.C.Cir.1981).

Therefore, based on the recent Supreme Court decision in *Aramco*, this Court has no choice but to decide that NEPA does not apply to the NSF's decision to build the incinerators in the Antarctica.[1]

### III

■ Executive Order 12114 "[w]hile based on independent authority ... furthers the purposes of [NEPA] ... and represents the United States government's exclusive and complete determination of the procedural and other actions to be taken by agencies to further the purpose of [NEPA] with respect to the environment outside the United States...." *See* Executive Order 12114. The Executive Order further states that "nothing in this Order shall be construed to create a cause of action." *Id.*

Plaintiff contends that a private action can be brought to enjoin violations of Executive Order 12114. EDF asserts that the mandatory character of the Executive Order makes it appropriate to conclude that a private right of action exists under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Plaintiff relying on *United States v. Wayte*, 549 F.Supp. 1376, 1387 (C.D.Cal.1982), *rev'd on other grounds*, 710 F.2d 1385 (9th Cir.1983), *aff'd*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), argues that "an Article III court is not proscribed from reviewing the question of enforceability of an executive order, irrespective of an attempt by the executive branch ..." to prohibit judicial review.

Meanwhile, defendants contend that there is no private cause of action because Executive Order 12114 rests directly on the President's authority and does not have the force and effect of law unless it is issued pursuant to a statutory mandate or delegation of authority from Congress. *See Independent Meat Packers Ass'n v. Butz*, 526 F.2d 228, 234 (8th Cir.1975) *cert. denied*, 424 U.S. 966, 96 S.Ct. 1461, 47 L.Ed.2d 733 (1976).

The United States Court of Appeals for the District of Columbia in *Manhattan-Bronx Postal Union v. Gronouski*, 121 U.S.App.D.C. 321, 326–27, 350 F.2d 451, 456–57 (1965), *cert. denied*, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966), declared that executive orders without specific foundation in congressional action are not judicially enforceable in private civil suits. Further, in *In re Surface Mining Regulation Litigation*, 627 F.2d 1346, 1357 (D.C.Cir.1980), the Court found that when an executive order is primarily intended to implement the President's personal policies there is no legal framework enforceable by private civil actions. (citations omitted). Thus, Executive Order 12114 provides no basis for a private civil cause of action.

### IV

While the Court is compelled to conclude that NEPA does not apply extraterritorially and Executive Order 12114 does not provide for a private cause of action, the Court is concerned with the manner in which NSF undertook the Environmental Impact Assessment and had the Court had subject matter jurisdiction under either NEPA or Executive Order 12114 the outcome in the present action may have been different.

Accordingly, the Court concludes that defendants' motion to dismiss should be granted and plaintiff's motion for a preliminary injunction denied as moot.

---

**1.** However, the Court does note that many of the problems that have arisen in the present action could have been avoided had NSF not attempted to mix and match portions of NEPA and the Executive Order in concluding that building the incinerators would not have a significant effect on the environment. Further, the Court is troubled by NSF's response that Antarctica is not ecologically critical to EDF's comments on the Draft Environmental Impact Assessment.