**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Harlan M. BALK, David Balk, Paul Patton, and Billy R. Carey, Defendants-Appellants.**

**Nos. 82–1256 to 82–1259.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1983.

Decided May 27, 1983.

James W. Tetley, San Diego, Cal., for Harlan M. Balk, David Balk and Paul Patton.

Howard B. Frank, San Diego, Cal., for Billy R. Carey.

William Braniff, Asst. U.S. Atty., argued; Peter K. Nunez, U.S. Atty.; William Braniff, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Before HUG and CANBY, Circuit Judges, and ORRICK,* District Judge.

* The Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

HUG, Circuit Judge:

The appellants were convicted in the district court of conspiracy in violation of 18 U.S.C. § 371 and making and using false documents in violation of 18 U.S.C. § 1001. The convictions were based on falsified welder certifications, which are documents necessary to obtain certain work as a military contractor or subcontractor. The issues raised in this appeal concern the manner in which the jury was selected, the sufficiency of the evidence, the interpretation of 18 U.S.C. § 1001, and the district court's ruling on a discovery motion. We affirm.

## I

Appellants Harlan Balk, David Balk, and Paul Patton were officers and employees of Precision Welding and Stress Relieving, Inc. ("Precision"), a company which did a considerable amount of ship repair work for the Navy as a contractor and subcontractor.

The Navy requires that welders and welding procedures used by its contractors be certified as meeting certain specifications. In order to obtain a certification, a sample weld must be sent to an outside testing company, which verifies that the weld meets government specifications. The American Testing Institute ("ATI") was the outside testing company used by Precision. Appellant Carey, ATI's president and director of metallurgy, verified the welds and signed the certifications on which this prosecution is based.

The Government's investigation of Precision began in late 1980 when, following a report by a recently discharged Precision employee, the Navy discovered that Precision had been performing substandard welding work. The Navy asked Precision to supply it with the certifications for each welder who had worked on the projects where defective work was found. Precision complied with this request. A Navy investigator then called Carey at ATI, who verified the certifications Precision had supplied and provided information on additional Precision certifications. It was later determined that many of these certifications

had been falsified, and were based on test welds that had never been performed.

In February 1981, Precision and ATI were served with grand jury subpoenas calling for production of certifications and related documents. In response to the subpoena, Precision produced original documents and ATI produced photocopies of the same documents. Many of these documents were falsified. Included among these documents were the falsified certifications on which the criminal charges in this case are based.

Appellants were each charged with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and 21 counts of making and using false documents in violation of 18 U.S.C. § 1001. A jury found appellants guilty on all counts.

## II

■ The appellants argue that allowing the Government to use its seventh peremptory challenge against a regular juror violated Rule 24(c) of the Federal Rules of Criminal Procedure and was reversible error.

The district judge allotted nine peremptory challenges to the Government and fifteen peremptory challenges to the defense. The Government's understanding was that the district judge would permit each side to exercise its peremptory challenges against any of the prospective jurors. It was the appellants' understanding that, pursuant to Rule 24(c), challenges for regular and alternate jurors were to be separate, and that the Government would use its first six challenges against regular jurors and its final three challenges against alternate jurors. The appellants claim they did not know that their challenges could be used against any prospective juror until the Government was permitted to use its seventh peremptory challenge against a venireman who otherwise would have been a regular juror. The Government's last two challenges were used against prospective jurors who otherwise would have been alternates.

The appellants argue that permitting the Government to use its seventh challenge against someone who otherwise would have been a regular juror violated Rule 24(c) because that rule requires that challenges to regular and alternate jurors be segregated. The appellants are correct that Rule 24(c) does not permit the combining of regular and alternate peremptory challenges, and we do not condone the practice, but it is not reversible error unless prejudice is shown. *See United States v. Flaherty,* 668 F.2d 566, 601 (1st Cir.1981); *United States v. Taylor,* 562 F.2d 1345, 1354–55 (2d Cir.), *cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977).

The appellants have shown no prejudice. They were given three more challenges than required by Rule 24 and, under these circumstances, it was not an abuse of discretion to give the Government one extra challenge. *See United States v. Haldeman,* 559 F.2d 31, 79–80 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). The appellants were not deprived of the use of any of their challenges and, after the Government's seventh challenge, they had a number of challenges remaining which the district judge permitted them to exercise against any prospective juror. *See United States v. Pimentel,* 654 F.2d 538, 541 (9th Cir.1981). The combining of regular and alternate peremptory challenges was therefore not reversible error in this case, although the better practice would have been to separate those challenges.

### III

■ Appellant Carey argues that there was insufficient evidence of intent to support his convictions. The evidence is sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). After reviewing the record, we conclude that there was sufficient evidence for the jury to find that Carey knowingly and willfully participated in the crimes.

### IV

■ Appellant Carey also argues that the falsified welder certifications were not a "matter within the jurisdiction of any department or agency of the United States," as required for a violation of 18 U.S.C. § 1001, because the certifications were falsified in anticipation of grand jury proceedings, and the grand jury is not a department or agency of the federal government within the meaning of section 1001.

The significance of the welder certifications is that they were required by the Navy of its contractors and subcontractors. The Navy is an agency or department of the federal government for purposes of section 1001. *See United States v. Bramblett,* 348 U.S. 503, 509, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955). In determining whether this is a matter within the Navy's jurisdiction, "the term 'jurisdiction' should not be given a narrow or technical meaning." *Bryson v. United States,* 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969). Under section 1001, the falsified documents did not have to be submitted to the Navy; it is only necessary that their intended use be related to a matter within the jurisdiction of the Navy. *See United States v. Hooper,* 596 F.2d 219, 223 (7th Cir.1979); *Ebeling v. United States,* 248 F.2d 429, 434 (8th Cir.), *cert. denied,* 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261 (1957); *United States v. Steiner Plastics Mfg. Co.,* 231 F.2d 149, 152 (2d Cir.1956). The importance of the falsified documents was that they were necessary to obtain work as a Navy contractor. This is clearly a matter within the jurisdiction of the Navy within the meaning of section 1001.

### V

Appellant Harlan Balk moved in the district court under Fed.R.Crim.P. 16(a)(1)(C) for a discovery order requiring the United States Attorney to provide him with records of all cases involving false welder certifications where prosecution was declined. Balk

claimed that the records were relevant to a defense of selective prosecution. His theory was that he was singled out for prosecution because he had written letters to the Navy and a member of Congress complaining about slow payment for work that his company had performed for the Navy. The district court denied the motion. Balk argues that this was reversible error.

■ A district court's discovery rulings under Rule 16 will not be disturbed absent an abuse of discretion. *United States v. Lee,* 589 F.2d 980, 989 (9th Cir.), *cert. denied,* 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 382 (1979). Rule 16(a)(1)(C) gives the defendant access to government records "material to the preparation of his defense." To show that government records are "material" to a selective prosecution defense, the defendant must first establish a colorable claim of selective prosecution. *United States v. Ness,* 652 F.2d 890, 892 (9th Cir.), *cert. denied,* 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981); *see United States v. Kahl,* 583 F.2d 1351, 1354–55 (5th Cir.1978). The two elements of a selective prosecution claim are "that others similarly situated have not been prosecuted and that the allegedly discriminatory prosecution of the defendant was based on an impermissible motive." *Ness,* 652 F.2d at 892.

■ Balk did not make a sufficient showing of a colorable selective prosecution claim. Other than the weak inferences that might be drawn from his letters complaining of slow payment, there was no showing of impermissible motive at some crucial stage in the investigation or prosecution, nor was there any showing of others similarly situated who had not been prosecuted. *See id.* The Government submitted affidavits stating that those responsible for the prosecution had no knowledge of the letters. The district court did not abuse its discretion by denying the discovery motion.

The convictions are AFFIRMED.