UNITED STATES of America,
Plaintiff–Appellee,

v.

Rodney BOURGEOIS, Defendant–Appellant.

No. 90–50595.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1991.

Decided May 19, 1992.

Rose Reilly, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Mark C. Holscher, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before: SNEED, BEEZER and TROTT, Circuit Judges.

BEEZER, Circuit Judge:

Rodney Bourgeois, a black man arrested as part of "Operation Streetsweep," claims that the decision to prosecute him was unconstitutionally based on race. In furtherance of this claim, Bourgeois sought discovery of government documents about Operation Streetsweep. The district court denied the discovery request, denied a motion to dismiss for selective prosecution and accepted Bourgeois' conditional guilty plea. Bourgeois' timely appeal challenges only the denial of discovery. We have jurisdiction and we affirm.

## I

On June 14 and 15, 1990, federal agents and local law enforcement officers arrested more than 100 alleged gang members in South Central Los Angeles. These arrests were part of a publicized, nationwide effort, dubbed "Operation Streetsweep," that resulted in at least 160 arrests in 11 states. The government prosecuted ten Los Angeles arrestees for federal firearms violations. All ten, including Bourgeois, are black men suspected of being affiliated with either the Crips or the Bloods, two Los Angeles-based gangs.

As Bourgeois' brief states, "[a]lthough many other notorious gangs also use guns and violence—ranging from Latino (Nuestra Familia, Maravilla, 18th Street, Lomas), [to] Asian (Yu Li, Joe Boys, Wah Ching, Frogmen) [and] White (Hells Angels, Hole Stoners, Aryan Brotherhood)—only Black men were arrested and charged with federal violations as a result of 'Operation Streetsweep.' No other gangs were identified. No other race was represented...."

This exclusive representation was, Bourgeois claims, deliberate. His review of information provided by the government suggests that the ten men had been ostensibly identified through two methods of investigation. The first method focused on felons who purchased weapons from gun stores or who redeemed weapons from pawn shops. The second method focused on felons with a 1988 or 1989 state arrest indicating that they possessed a firearm. "Out of these two potentially *enormous* multi-racial pools of similarly situated persons, 'Operation Streetsweep' prosecuted only Black persons. The fact that only Blacks were prosecuted from such a tremendous class of similarly situated persons demonstrates the intentional selection of Blacks for prosecution," according to Bourgeois.

The government asserts that it targeted the Crips and Bloods because the gangs' members engage in violence and drug trafficking throughout the country. It did not target the Crips and Bloods because of the racial composition of their membership. Furthermore, the government stresses that it does prosecute people of all races for violating federal firearms laws. It characterizes Operation Streetsweep as an isolated program of gang-member arrests: "These arrests were coordinated to generate publicity and thus achieve maximum deterrence value in law enforcement's effort to combat street crime and the proliferation of dangerous weapons among inner-city street gangs." According to a government affidavit, the cases against five of the ten men were referred for prosecution to the United States Attorney's Office months before prosecutors became aware of Operation Streetsweep.

Bourgeois' prosecution stemmed from his 1989 purchase of a 12-gauge Mossberg shotgun. Federal agents conducting a records inspection at a Los Angeles gun

store had noted that Bourgeois purchased a firearm that the government considers a "weapon of choice" for crime. Accordingly, they checked his criminal history. Despite his prior felony conviction and two pending felony charges (all for drug activities), Bourgeois had signed a form indicating that he was not a felon and not facing felony charges. Bourgeois was arrested on June 14, 1990, the first day of Operation Streetsweep. He was indicted for violation of 18 U.S.C. § 922(g)(1) (1988), which prohibits felons from possessing firearms.

Bourgeois moved to dismiss the indictment based on selective prosecution. He filed a discovery request seeking documents broadly related to Operation Streetsweep and the government's efforts to combat violence by gang members. The district court denied both the motion to dismiss and the request for discovery. Bourgeois subsequently entered a conditional plea of guilty for violating 18 U.S.C. § 922(g)(1). The court sentenced him to ten months' imprisonment followed by three years' supervised release.

## II

We have not previously resolved the question whether abuse of discretion or clearly erroneous is the appropriate standard of review for denial of discovery relating to a selective prosecution claim. *See United States v. Aguilar*, 883 F.2d 662, 705 (9th Cir.1989), *cert. denied,* — U.S. ——, 111 S.Ct. 751, 112 L.Ed.2d 771 (1991) (citing conflict in a case reviewing a denial of discovery); *United States v. Moody*, 778 F.2d 1380, 1385 (9th Cir.1985), *amended by*, 791 F.2d 707 (9th Cir.1986) (citing conflict in a case reviewing denial of motion to dismiss because of selective prosecution). Both the *Aguilar* and *Moody* opinions declined to decide which of the two deferential standards is correct. Both opinions found neither clear error nor abuse of discretion in the district courts' decisions. *Aguilar*, 883 F.2d at 705; *Moody*, 778 F.2d at 1385.

■ We now decide that the appropriate standard of review is abuse of discretion. "Discovery questions are ordinarily reviewed for abuse of discretion." *United States v. Michaels*, 796 F.2d 1112, 1115 (9th Cir.1986) (applying standard in criminal case), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). *See also Ah Moo v. A.G. Becker Paribas, Inc.*, 857 F.2d 615, 619 (9th Cir.1988) (applying abuse of discretion standard to challenge regarding adequacy of discovery in civil case); *United States v. Balk*, 706 F.2d 1056, 1060 (9th Cir.1983) (applying abuse of discretion standard to denial of discovery motion in selective prosecution case). The *Aguilar* opinion suggests that this usual review standard might not apply in a selective prosecution case. The opinion refers to *Moody* for support. *Aguilar*, 883 F.2d at 705.

The *Moody* opinion, however, did not review a discovery determination. It reviewed a determination on the merits of a selective prosecution claim. *Moody*, 778 F.2d at 1385–1386. The decisions the *Moody* opinion cites as utilizing a clearly erroneous standard similarly involve determinations on the merits of the defendants' claims, not determinations regarding the defendants' requests for discovery. *See, e.g., United States v. Stewart*, 770 F.2d 825, 829 n. 2 (9th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 888, 88 L.Ed.2d 922 (1986).

When faced with this discovery question, other circuits review for abuse of discretion. *See, e.g., United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir.1990); *United States v. Hintzman*, 806 F.2d 840, 846 (8th Cir.1986); *United States v. Greenwood*, 796 F.2d 49, 52 (4th Cir.1986); *United States v. Berrios*, 501 F.2d 1207, 1212 (2d Cir.1974); *United States v. Berrigan*, 482 F.2d 171, 181 (3rd Cir.1973). We agree that this is the appropriate standard. Accordingly, we will not reverse the district court's order denying discovery unless it reflects an abuse of discretion.

## III

■ Bourgeois claims that it was because of his race that the government selected him, and not other armed felons, to

be prosecuted in federal court. Although the government "retains broad discretion as to whom to prosecute," its discretion "is not unfettered." *United States v. Wayte*, 470 U.S. 598, 608, 609, 105 S.Ct. 1524, 1531, 1532, 84 L.Ed.2d 547 (1985) (quotations omitted). More than a century ago, the Supreme Court observed that the application of laws "with an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances" constitutes a denial of equal protection. *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886) (vacating convictions of Chinese men for illegally operating laundries, where facially neutral law had been discriminatorily applied).

■ As the Second Circuit aptly commented, "[n]othing can corrode respect for a rule of law more than the knowledge that the government looks beyond the law itself to arbitrary considerations, such as race, religion, or control over the defendant's exercise of his constitutional rights, as the basis for determining its applicability." *Berrios*, 501 F.2d at 1209. Accordingly, "[a] defendant cannot be convicted if he proves unconstitutional discrimination in the administration of a penal statute." *United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir.1972) (vacating conviction of notorious census protestor for failure to answer census questions).

■ To succeed on a selective prosecution claim, the defendant bears the burden of showing both "that others similarly situated have not been prosecuted and [also] that the prosecution is based on an impermissible motive." *United States v. Wayte*, 710 F.2d 1385, 1387 (9th Cir.1983), *affirmed* 470 U.S. 598, 105 S.Ct. 1524, 84

L.Ed.2d 547 (1985) (allowing prosecution of vocal draft resister for failure to register). Thus, selective prosecution claims are evaluated "according to ordinary equal protection standards." *Wayte*, 470 U.S. at 608–09, 105 S.Ct. at 1531–32 (citing *Personnel Adm'r v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). This includes demonstrating discriminatory intent. *Aguilar*, 883 F.2d at 705–06; *United States v. Schmucker*, 815 F.2d 413, 419 (6th Cir.1987). At this stage, though, Bourgeois seeks not to prove his claim, but to obtain discovery to support this claim.

To obtain discovery on a selective prosecution claim the defendant must first identify specific facts that establish a "colorable" basis for both elements of the claim. *United States v. Balk*, 706 F.2d 1056, 1060 (9th Cir.1983). We have not yet determined whether the colorable basis threshold for discovery is the same as or lower than the "prima facie" threshold required for an evidentiary hearing on a selective prosecution claim. *See Aguilar*, 883 F.2d at 708 (noting split among circuits but taking no position). It has been suggested that, according to a 1978 decision, we require merely a "nonfrivolous" showing. *United States v. Erne*, 576 F.2d 212, 216 (9th Cir.1978). At the other extreme, it has been suggested that, according to a 1981 decision, we require absolutely a "prima facie" showing. *United States v. Ness*, 652 F.2d 890, 892 (9th Cir.) *cert. denied* 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981). Neither decision precisely established either requirement.[1]

---

1. *Erne* requires the defendant to allege sufficient facts to "take the question past the frivolous stage" in order to obtain an *evidentiary hearing*. 576 F.2d at 216. After *Wayte*, however, an evidentiary hearing is predicated upon the defendant's establishment of a prima facie case. *See United States v. Schmucker*, 815 F.2d 413, 418 (6th Cir.1987); *see also Aguilar*, 883 F.2d at 708 (presuming that evidentiary hearing predicated upon a prima facie showing). Accordingly, even if *Erne* is read to impliedly require a nonfrivolous showing for discovery,

that reading is open to question in light of subsequent cases.

*Ness* initially discusses both the defendant's request for an evidentiary hearing and for discovery. 652 F.2d at 892. The question on appeal, however, was limited to whether the case should be remanded for an evidentiary hearing. Hence, it is not clear that *Ness* applies the prima facie threshold to discovery requests as well. Furthermore, *Ness* predated *Wayte*, and thus did not consider what effect, if any, the intent re-

Bourgeois contends that the proper standard is significantly lower than a prima facie case. He urges us to allow discovery if the defendant presents "some evidence" of selective prosecution sufficient to show that the assertion is "not frivolous." The standard for discovery is lower, he argues, in recognition of the fact that "most of the relevant proof in selective prosecution cases will normally be in the Government's hands." *Wayte*, 470 U.S. at 624, 105 S.Ct. at 1539 (Marshall, J., dissenting). The higher the threshold, the more likely a defendant will face a dilemma: to obtain discovery, a defendant must show discriminatory intent; but to sufficiently show discriminatory intent, the defendant needs discovered documents.

The *Wayte* majority solidified the elements of a meritorious selective prosecution claim, but did not set out a discovery threshold. In dissent, however, Justice Marshall suggested that "Wayte need not have made out a full prima facie case in order to be entitled to discovery.... the standard for discovery is merely nonfrivolousness." *Wayte*, 470 U.S. at 625, 105 S.Ct. at 1540 (Marshall, J. dissenting). Several circuits have followed this analysis and held that the discovery threshold is something less than a prima facie case. *See United States v. Heidecke*, 900 F.2d 1155, 1158–59 (7th Cir.1990); *United States v. Schmucker*, 815 F.2d 413, 418 (6th Cir. 1987); *United States v. Gordon*, 817 F.2d 1538, 1540 (11th Cir.1987), *vacated on other grounds*, 836 F.2d 1312 (1988).

The Eighth and Second Circuits, by contrast, have required defendants to establish a prima facie case. *St. German of Alaska Eastern Orthodox Catholic Church v. United States*, 840 F.2d 1087, 1095 (2nd Cir.1988); *United States v. Hintzman*, 806 F.2d 840, 846 (8th Cir.1986). The Seventh Circuit criticized this approach as "aris[ing] more from misapplication of precedent than from reasoned analysis." *Heidecke*, 900 F.2d at 1158. In a more recent decision denying discovery, the Eighth Circuit did not repeat its previously established prima facie standard, but instead required the

quirement has on the height of the discovery

defendant to allege "sufficient facts to take the question past the frivolous state and raise[ ] a reasonable doubt as to the prosecutor's purpose." *United States v. Aanerud*, 893 F.2d 956, 961 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990).

█ We agree that the discovery threshold should not be so high as to require establishment of a prima facie case. We disagree, however, with Bourgeois' contention that a defendant need only present some evidence showing that his claim is not frivolous. We hold that to obtain discovery on a selective prosecution claim, a defendant must present specific facts, not mere allegations, which establish a colorable basis for the existence of both discriminatory application of a law and discriminatory intent on the part of government actors. This is a high threshold. As has been true historically, it will be the rare defendant who presents a sufficiently strong case of selective prosecution to merit discovery of government documents.

We adopt a high threshold in recognition of two distinct policy considerations. First, courts are ill equipped to assess a prosecutor's charging decisions. As the *Wayte* Court explained:

> The decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

*Wayte*, 470 U.S. at 607, 105 S.Ct. at 1530.

Second, court oversight of prosecutorial decisions could undermine effective law enforcement. As the *Wayte* Court reasoned:

> Judicial supervision in this area ... entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine

threshold.

prosecutorial effectiveness by revealing the Government's enforcement policy. 470 U.S. at 607–08, 105 S.Ct. at 1530–31.

We believe that this high threshold will discourage fishing expeditions, protect legitimate prosecutorial discretion, safeguard government investigative records, and yet still allow meritorious claims to proceed. This threshold also draws on the effectively high hurdle all the circuits have adopted, regardless of the phraseology of their standards. Our research of circuit court opinions uncovered only a handful of instances in the past few decades in which a defendant obtained discovery or dismissal of charges based on a selective prosecution claim. *See, e.g., United States v. Adams,* 870 F.2d 1140 (6th Cir.1989) (allowing discovery); *Gordon,* 817 F.2d 1538 (allowing discovery and evidentiary hearing); *United States v. Steele,* 461 F.2d 1148 (9th Cir. 1972) (reversing conviction).[2] In those cases, the defendants presented solid, credible evidence in support of their claims. They did not succeed based on the low threshold that Bourgeois advances.

### IV

In making his initial showing of selective prosecution, Bourgeois focuses on the firearms prosecutions which stemmed from the arrests during the July 14 and 15 phase of Operation Streetsweep. Common sense, demographic evidence and statistical probability strongly suggest, he argues, that the government could as readily have identified and prosecuted non-blacks for firearms violations. Yet, for this operation, the government appears to have investigated gun stores in predominantly black neighborhoods and otherwise identified black, but not non-black felons who purchased guns.

The district court found the two-day focus too narrow. Instead, it considered a two-year time span, August 1, 1988 to July 31, 1990, and found that the government

had charged more than 140 people in the Central District of California with being a felon in possession of a firearm or with making a false statement in connection with the purchase of a firearm. Bourgeois did not allege that all or most of these cases involved blacks.

The district court properly focused its inquiry on prosecutions over a reasonable period of time. *United States v. Aguilar* examines all federal prosecutions in Arizona for alien smuggling over a three-year period. 883 F.2d at 703. *See also United States v. Wilson,* 639 F.2d 500, 504 (9th Cir.1981) (similar tax violation cases then pending in Arizona). The *Aguilar* defendants, members of the Sanctuary Movement, pointed to evidence that the government rarely prosecuted ranchers and farmers who employed illegal aliens.

*Aguilar* rejected this focus as too narrow. "Their suggested focus exclusively upon agricultural employers seeks to distract attention away from the fact that the government generally *does* prosecute organized smugglers, albeit organized alien smugglers following the dollar instead of the cross." 883 F.2d at 707. Similarly here, there is no showing that the government does not generally prosecute felons of all races who possess firearms.

As a policy matter, Bourgeois' narrow time focus is untenable. If adopted, it would severely limit law enforcement efforts directed at specific groups of criminals. As both parties note, many gangs and criminal groups are racially homogeneous. Operations targeted at Wall Street bankers, alien smugglers, or any of the gangs listed by Bourgeois in his brief are likely to result in the prosecution of several people of the same race. This, in itself, does not suggest the prosecution decisions were based on race. This, in itself, does not supply a reason to compel discovery. The government need not provide discovery

2. In *Steele,* the most recent Ninth Circuit decision finding merit in a selective prosecution claim, the defendant challenged his conviction for failure to answer census questions. He demonstrated that the government had compiled background reports on people active in the

census resistance movement and then prosecuted only those people. *Steele,* 461 F.2d at 1151. He also identified six people who had refused to answer census questions, but who were not prosecuted. *Id.* at 1152.

on a selective prosecution claim simply because law enforcement officials focused for a short time on a racially homogeneous criminal group. Selective prosecution concerns could be raised by long-term targeting of one gang to the exclusion of others whose members are equally culpable and apprehensible. But that is not this case.

## V

■ Bourgeois fails to establish a colorable basis for the first element of his claim, that "others similarly situated have not been prosecuted." *Wayte*, 710 F.2d at 1387. He alleges generally that the government must have known, during this operation, of non-blacks felons who possessed firearms. Such a factually devoid allegation is insufficient. *See e.g. United States v. Wilson*, 639 F.2d 500, 504–05 (9th Cir.1981) (mere allegations insufficient). More importantly, even if Bourgeois had factual support for this allegation, that would not establish a colorable basis for his claim. As discussed above, the relevant inquiry is the history of prosecutions over a reasonable period of time. Bourgeois makes no attempt to show that, in any span of time, the government has declined to prosecute similarly situated, non-black felons illegally in possession of firearms.

Bourgeois also fails to establish a colorable basis for the second element of his claim, that "[his] prosecution is based on an impermissible motive." *Wayte*, 710 F.2d at 1387. He alleges that the motivation behind the two-day sweep could not have been race-neutral and have achieved the result it did. The government presents a permissible motive. For this operation of timed, coordinated arrests, the government credibly maintains that it targeted persons associated with the Crips and the Bloods because the gang members are often armed, violent and involved in drug trafficking.

Bourgeois analogizes his case to *United States v. Gordon*, 817 F.2d 1538 (11th Cir. 1987), *vacated on other grounds*, 836 F.2d 1312 (1988). *Gordon* differs in that there the defendant presented a credible basis for his claim that the government acted under a racially discriminatory motive.

The defendant, a leader of a Georgia political organization representing blacks, challenged his prosecution for voting fraud. He submitted a statement allegedly made by a Justice Department spokesperson explaining that the voting fraud investigations were part of a "new policy ... brought on by the 'arrogance on the part of blacks' in these [black-majority] counties." *Id.* at 1540. Not only did that statement concretely present an impermissible motive, but it also jibed with other evidence about the unconventional nature of the election fraud investigation. *Id.* Bourgeois' proof does not approach this level.

Additionally, the government here supplies ample evidence of a permissible motivation to prosecute Bourgeois. He committed a felony and then illegally obtained a shotgun. Additionally, he does not deny the government's allegation that he is a member of the Rolling 20's sect of the Bloods gang. As a felon illegally in possession of a firearm, his situation differs from that of most defendants who raise meritorious selective prosecution claims. Typically the crime charged is one rarely prosecuted. *See, e.g., United States v. Adams*, 870 F.2d 1140, 1141 (6th Cir.1989) (filing false income tax returns, where there was no outstanding deficiency and the returns had been corrected before the investigation began); *United States v. Berrios*, 501 F.2d 1207, 1211 (2nd Cir.1974) (holding high union office within five years of a felony conviction); *United States v. Steele*, 461 F.2d 1148, 1150 (9th Cir.1972) (failing to answer census questions).

Bourgeois does not present a colorable basis for his selective prosecution claim. Given the ephemeral evidence Bourgeois presented, we cannot say that the district court abused its discretion in denying the discovery motion.

## VI

The judgment of the district court is AFFIRMED.