60 F.3d 835
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Jorge Luis ROSALES, Defendant/Appellant.
 No. 93-30300.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 13, 1994.
Decided July 5, 1995.
 
 Before: ALDISERT,* NORRIS and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jorge Luis Rosales appeals his sentence on a jury conviction for conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. Secs. 841(a)(1) and 846, contending that the district court abused its discretion in denying his motion for discovery of the log books of the arresting trooper which might have demonstrated that the trooper stopped Rosales not to pursue him for a minor traffic violation but rather to search for drugs, that it erred in concluding that the trooper was not prohibited from asking Rosales to consent to a search of his car after the traffic citation was issued, and that it abused its discretion by limiting defense counsel's cross-examination of the trooper. Because we conclude that the court did not err, we affirm.
 
 
 3
 Jurisdiction was proper in the trial court based on 18 U.S.C. Sec. 3231. This court has jurisdiction under 28 U.S.C. Sec. 1291. Appeal was timely filed under Rule 4(b) of the Federal Rules of Appellate Procedure.
 
 
 4
 We review a district court's denial of discovery for abuse of discretion. United States v. Bourgeois, 964 F.2d 935, 937 (9th Cir.), cert. denied, 113 S.Ct. 290 (1992). Factual findings that a traffic stop was not pretextual are reviewed for clear error. United States v. Gutierrez-Mederos, 965 F.2d 800, 802-03 (9th Cir.1992), cert. denied, 113 S.Ct. 1315 (1993). We review the district court's finding of voluntary consent for clear error, and view the evidence in the light most favorable to that decision. Id. at 803. We review the district court's decision to limit the scope of cross-examination for abuse of discretion. United States v. Dischner, 960 F.2d 870, 882 n. 12 (9th Cir.1992), cert. denied, 113 S.Ct. 1290 (1993).
 
 I.
 
 5
 On January 11, 1993, shortly before 1:00 a.m., Oregon State Trooper Darrin F. Phillips observed a white and gray 1984 Lincoln Town Car with California license plates travelling at what he believed was an excessive rate of speed. Trooper Phillips testified that he followed the car, "pacing" it from a distance of 400-500 feet, and determined that it was travelling 74 miles per hour in a 65 mile per hour speed limit zone. He further observed that the car was weaving within its lane and crossed over the painted center and outside passing lane divider lines.
 
 
 6
 Suspecting that the driver was intoxicated, Trooper Phillips turned on his dash-mounted video-camera and began recording the manner in which the car was being driven. When the car eventually merged to the right lane, Trooper Phillips activated his overhead lights and effected a stop. The windows of the automobile were tinted. Trooper Phillips testified that he could not see into the vehicle or ascertain the race, sex or ethnic heritage of the occupants prior to the stop.
 
 
 7
 When Trooper Phillips advised the driver, Rosales, why he had been stopped, Rosales denied drinking. Trooper Phillips activated a tape recorder. He began asking questions in English and Rosales answered them in English. During their conversation, Trooper Phillips noticed a radar detector between the front seats and a pager hanging on the front visor. He further observed that Rosales and his passengers were very well-dressed young males wearing gold watches and rings. According to Trooper Phillips, Rosales seemed extremely nervous during the questioning. He did not have a driver's license but displayed a California Identification Card and registration papers.
 
 
 8
 After citing Rosales for driving without a license, Trooper Phillips deactivated the overhead lights on his patrol car and informed Rosales that he was free to go. Trooper Phillips then turned around and began to walk away but, before reaching his police car, turned back and asked Rosales if he would talk to him. Rosales agreed. Trooper Phillips asked Rosales if he had any drugs, weapons or large amounts of cash in the car, to which Rosales answered no. Trooper Phillips then asked if he could look in the car. Rosales consented to a search. Another trooper on the scene asked each of the occupants if they understood that looking into the car meant the troopers were going to search the car. All three indicated that they understood.
 
 
 9
 The troopers found bags in the trunk and obtained further consent from Rosales to conduct a canine sniff search of the contents. The troopers found a yellow plastic bag in one of the bags. They field tested the substance contained therein and determined that it was methamphetamine, weighing in excess of two kilograms. Rosales and his passengers were arrested and Rosales was given his Miranda rights, which he waived. When asked who owned the bag in which the drugs were found, Rosales responded "Mine." Asked why they were in his bag, Rosales answered in Spanish, "They ordered them from us." He then told the police that he was planning to deliver the drugs to a nearby gas station, where the recipients would recognize him by his car and clothing. When offered an opportunity to make the delivery so the police could apprehend the buyers, Rosales refused and stated, "Put me in jail, that's the way things go."
 
 
 10
 On April 27, 1993, a magistrate judge denied Rosales' discovery request for Trooper Phillips' log book records without prejudice to renew before the district court. Rosales sought to show that Trooper Phillips had a history of stopping and searching young Hispanic men fitting a drug courier profile. The magistrate judge concluded that Trooper Phillips did not know the race or ethnicity of the occupants until after he stopped them and that Rosales failed to make the requisite showing of need and materiality.
 
 
 11
 On May 10, 1993, the district court held an evidentiary hearing on Rosales' motion to suppress the evidence seized from his vehicle. After listening to the testimony and viewing the videotape of the stop, the court concluded that the stop was valid, that there were legitimate reasons for questioning Rosales and that Rosales clearly consented to the search. The court found as a fact that, at the time of the stop, Trooper Phillips was unable to determine the race or ancestral origin of the car's occupants. It noted that the windows were tinted and that the stop occurred at night. The district court denied Rosales' motion to suppress and took his discovery motion under advisement. On June 2, 1993, it reconsidered, but denied, Rosales' motion to suppress and denied his motion for discovery. The case proceeded to trial and Rosales was found guilty of the crime charged.
 
 
 12
 It is against these facts as credited by the district court that we examine Appellant's contentions.
 
 II.
 
 13
 We review the denial of a discovery request for Trooper Phillips' log books for abuse of discretion. Bourgeois, 964 F.2d at 937. A defendant "must present specific facts, not mere allegations, which establish a colorable basis for the existence of both discriminatory application of a law and discriminatory intent on the part of government actors. This is a high threshold. As has been true historically, it will be the rare defendant who presents a sufficiently strong case of selective prosecution to merit discovery of government documents." Id. at 939.
 
 
 14
 Rosales argues that he was stopped because he fit a drug courier profile of which Trooper Phillips was aware through his drug interdiction training. Specifically, Rosales contends Hispanic men driving American-made luxury or performance automobiles are targeted by Oregon State Troopers for pretextual traffic stops, the primary objective of which is to search stopped vehicles for contraband. Rosales claims to have sought discovery of Trooper Phillips' log books in order to demonstrate that he had stopped and searched a disproportionately large number of Hispanic men driving profile automobiles in the past.
 
 
 15
 The government responds that, regardless of whether troopers are instructed that Hispanic men driving expensive automobiles fit a drug courier profile, this stop could not have been pretextual because Trooper Phillips did not know the race or ethnicity of the occupants until after he had pulled the car aside for weaving and speeding. Trooper Phillips stated that he was pacing 400-500 feet behind the vehicle, it was nighttime and the windows of the car were tinted, making a visual inspection of the occupants impossible.
 
 
 16
 The magistrate judge credited Trooper Phillips' statement that he could not see into the car and denied the discovery motion on the ground that any past practice of stopping Hispanic drivers would be rendered immaterial if Trooper Phillips could not ascertain the race or ethnicity of the occupants in this instance. The district court further concluded that the stop was lawful because Trooper Phillips had a valid reason for stopping the car. The court stated:
 
 
 17
 The stop was a good stop. It was clear consent for the car, the trunk, and the bag that had the drugs. Good articulable reason for asking the question. We observed the (video/audio) tape, and consent was freely given.
 
 
 18
 SER at 114. In June 1993, the district court adopted the findings of the magistrate and denied Rosales' discovery motion.
 
 
 19
 Any discoverable evidence indicating Trooper Phillips stopped a disproportionate number of Hispanic men in the past is immaterial in light of the district court finding that, on this occasion, he could not have known the ethnicity of the passengers. Moreover, the mere possibility that Trooper Phillips stopped Rosales' vehicle because it conformed to some general drug courier profile does not render the stop invalid as long as "a reasonable officer 'would have' made the stop anyway, apart from his suspicions about other more serious criminal activity." United States v. Cannon, 29 F.3d 472, 476 (9th Cir.1994). In this case, Trooper Phillips observed Appellant weaving and travelling 74 miles per hour in a 65 mile per hour speed zone. Driving well in excess of the speed limit while weaving across the center line is a serious offense, which would prompt any reasonable officer to stop a car. Because Trooper Phillips did not know the race of the car's occupants and because any reasonable officer would have stopped a car under these circumstances, the traffic stop was permissible notwithstanding any suspicions Trooper Phillips might have had. Consequently, we conclude that the district court did not abuse its discretion in denying Appellant's discovery motion.
 
 III.
 
 20
 Rosales further contends that, after being issued a citation and being advised that he was free to leave, Trooper Phillips wrongfully asked him to consent to a search. We review the district court's finding of voluntary consent for clear error, and view the evidence in the light most favorable to that decision. Gutierrez-Mederos, 965 F.2d at 803. However, an otherwise valid consent may be tainted if it follows an illegal detention. See United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1299 (9th Cir.1988); United States v. Higareda-Santa Cruz, 826 F.Supp. 355, 359 (D.Or.1993).
 
 
 21
 Rosales relies primarily on Higareda-Santa Cruz, 826 F.Supp. 355 (D.Or.1993), in which a trooper stopped the defendant allegedly because the officer suspected that he was intoxicated, although admitting that the defendant was not speeding or violating any traffic laws. The trooper claimed he "could not remember whether he noticed that defendant appeared to be Hispanic" and that the defendant was "overly friendly" upon being stopped. Id. at 356. The trooper concluded that the defendant was not intoxicated and that a computer check of defendant's license and registration revealed nothing improper. Id. at 357. The trooper told the defendant that he was free to go, but then motioned with his hand to stay. He then asked defendant if he could search defendant's car, and defendant agreed. The trooper conducted a search of the vehicle and, upon prying open a vent, found five kilograms of cocaine. The district court concluded that the trooper improperly detained the defendant and did not obtain proper consent because defendant had only a cursory understanding of the English language. Id. at 359. It further concluded that, given the trooper's vague and conflicting account of why he made the initial stop, "the continued detention of defendant after the initial stop was a pretext to obtain defendant's consent to search for drugs." Id. at 358.
 
 
 22
 Higareda-Santa Cruz is distinguishable from the case before us. Here Trooper Phillips had an objectively valid reason for stopping Rosales--he was speeding and weaving over the painted lines. Once stopped, Rosales was found to be driving without a license. During the lawful stop, Trooper Phillips noticed a radar detector between the seats and a pager clipped to the visor. He further noted that the occupants acted nervously and that they wore unusually expensive clothing and jewelry for such young men. In addition, unlike the defendant in Higareda-Santa Cruz, Rosales evidenced a fair command of the English language and apparently understood the request to search his car. Trooper Phillips' account of the stop was corroborated by video and audiotape, in sharp contrast to the account of the trooper in Higareda-Santa Cruz which was replete with inconsistencies.
 
 
 23
 We believe that the facts before us are more analogous to Gutierrez-Mederos, 965 F.2d at 800, in which an Oregon State Trooper stopped a 1983 Chevrolet Camaro with California license plates for tailgating a van and failing to signal a lane change. Appellant first argued that this was a pretextual stop made because he was Hispanic. The district court rejected this argument, concluding that the traffic stop was valid and that the trooper could not determine the ethnicity of the car's occupants prior to the stop. We affirmed, stating: "In light of these facts, we hold that the district court properly credited the trooper's testimony and concluded that the stop was not based on appellant's race." Id. at 803. We further rejected appellant's contention that the stop occurred because his car fit the "Narcotics Trafficking Characteristics" profile: "Considering [the trooper's] handling of the stop and the manner in which the car had been driven, the district court had support for its finding that he had stopped appellant for the primary purpose of issuing a citation. This finding thus was not clearly erroneous, and we affirm the district court's ruling." Id.
 
 
 24
 While stopped, the appellant in Gutierrez-Mederos was asked if he would consent to a search of the vehicle, to which he agreed. Upon searching the car, the trooper found cocaine and firearms. The district court deemed the search consensual, finding that the driver both understood the request and freely assented to it. We affirmed, concluding that the district court's finding of consent was not clearly erroneous. See also United States v. Ruesga-Ramos, 815 F.Supp. 1393, 1401 (E.D.Wash.1993) (Trooper followed motorist because he fit drug courier profile and subsequently effected a valid traffic stop for a moving violation. Court held traffic stop not pretextual and subsequent consent to search car valid because trooper turned off lights and told motorist he was free to go, making it reasonable for motorist to conclude the stop was over and he could leave).
 
 
 25
 Based on the above analysis, the district court did not err in concluding that Trooper Phillips' request to search the car, and Rosales' subsequent consent, were valid.
 
 IV.
 
 26
 The district judge has "considerable discretion to limit cross-examination in order to prevent delay or avoid cumulative evidence." United States v. Gomez, 846 F.2d 557, 559 (9th Cir.1988). In response to being questioned as to why he asked Rosales to consent to a search of the vehicle, Trooper Phillips repeatedly stated that it was "unusual," "abnormal" or "out of context" to see such young men in such apparel and driving such an expensive car. After Trooper Phillips' fourth such response, the District Court stated: "Let's go ahead." Appellant argues that this was an impermissible curtailment of cross-examination. We disagree. Because Trooper Phillips answered four different times that it was not his common experience to see young men with such expensive clothing and jewelry driving a luxury automobile, the district judge did not abuse his discretion in directing defense counsel to move on to another line of questioning under the circumstances.
 
 V.
 
 27
 We have considered all arguments advanced by the parties and conclude that no further discussion is necessary.
 
 
 28
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3