67 F.3d 309
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin GRAVES, Defendant-Appellant.
 No. 94-10227.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 28, 1995.*
Decided Sept. 19, 1995.
 
 Before: FLETCHER, POOLE, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Kevin Graves appeals his twenty-year sentence for conspiracy and possessing with the intent to distribute cocaine base and cocaine. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 FACTUAL BACKGROUND
 
 3
 Graves was arrested after selling cocaine and cocaine base to a confidential informant (CI) and Kervin Silas, an undercover San Francisco Police Officer. The CI initially contacted the DEA because a woman named Patrice Kendrick had agreed to broker a cocaine transaction with unknown drug sellers. Kendrick eventually arranged for the CI and Silas to purchase one kilogram of cocaine from Graves. During negotiations prior to the transaction, the CI asked Graves to deliver half of the cocaine in crack cocaine form. Graves volunteered to "have the whole thing cooked up." Graves eventually sold approximately 744 grams of crack and 221 grams of powder cocaine to the CI and Silas.
 
 
 4
 After a jury trial, Graves was convicted of possessing with the intent to distribute cocaine base and cocaine, both in violation of 21 U.S.C. Sec. 841(a)(1), and conspiring to possess with the intent to distribute cocaine base and cocaine, in violation of 21 U.S.C. Sec. 846. Because the offenses of conviction involved more than fifty grams of crack and because the government alleged that Graves had a prior state felony drug conviction, 28 U.S.C. Sec. 841(b)(1)(A)(iii) called for a mandatory minimum sentence of twenty years' imprisonment. The district court imposed the mandatory minimum sentence.
 
 DISCUSSION
 I. Consideration of Graves's Prior Offense
 
 5
 Graves argues that the district court erred in considering his prior state felony conviction for sentencing purposes because he received ineffective assistance of counsel during the state court proceedings and, accordingly, his guilty plea was involuntary. To show that his plea of guilty was involuntary, Graves must prove by a preponderance of the evidence that his attorney's performance was defective under the standard established in Strickland v. Washington, 466 U.S. 668 (1984), and that, but for his counsel's errors, he would not have pleaded guilty and would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also United States v. Mims, 928 F.2d 310, 312 (9th Cir.1991). Graves has failed to meet this burden.
 
 
 6
 Graves was prosecuted in the state court after an Oakland police officer, responding to reports of narcotics trafficking out of a car parked in front of Graves's mother's house, found Graves and his brother Lee sitting in the suspect vehicle with two rocks of cocaine in plain view on the car's left rear floorboard. The officer arrested Graves and his brother and, in a search pursuant to their arrest, discovered $950 in Graves's pocket, a loaded handgun under the front passenger seat, and additional crack cocaine. Graves's only claim of error is that his attorney did not discuss with him the possible defense of claiming that the drugs found in the car were not his. Graves denies that the crack was his, suggests an innocent explanation for his possession of the $950 found in his pocket, and claims that a man named Carl was sitting in the car with him and Lee.
 
 
 7
 Graves's declaration in support of his sentencing memorandum states that he told his side of the story to a deputy public defender before he entered his guilty plea and that his attorney advised him that a jury would believe the police over him and that he would spend less time in prison if he pleaded guilty. Graves's own declaration demonstrates that his attorney did not fail to advise him of a possible defense; she simply stated that the jury would not believe the defense. This decision fell well within the "wide latitude counsel must have in making tactical decisions," see Strickland, 466 U.S. at 689, especially in light of evidence in the police report contradicting Graves's version of the facts.
 
 
 8
 Alternatively, Graves argues that the district court should have conducted an evidentiary hearing to pursue his claim of ineffective assistance. However, Graves waived an evidentiary hearing. The purpose of a May 3, 1993, hearing before the district court was to schedule an evidentiary hearing if the court deemed one appropriate or to schedule a date for sentencing if no such hearing was necessary. With regard to Graves's motion to exclude his prior conviction from consideration, Graves's attorney stated that the defense would call witnesses if necessary but volunteered to proceed on the declarations submitted in support of Graves's motion.
 
 II. Sentencing Entrapment
 
 9
 Graves argues that the government engaged in "sentencing entrapment" by asking him to sell a kilogram of crack cocaine. Sentencing entrapment occurs when the government induces a defendant, who may be predisposed to commit a minor or lesser offense, to commit a greater offense subject to more severe penalties. United States v. Staufer, 38 F.3d 1103, 1106 (9th Cir.1994). Graves argues that the government manipulated his sentence both by requesting a larger transaction than those which he was predisposed to make and by asking him to cook the cocaine into crack before delivery.
 
 
 10
 A mandatory minimum sentence of twenty years applies to a second-time offender who is convicted of participating in a narcotics transaction involving at least fifty grams of crack cocaine. 21 U.S.C. Sec. 841(b)(1)(A)(iii). Thus, to prevail on his claim of sentencing entrapment, Graves must demonstrate that he had neither the intent nor the resources to complete a fifty-gram crack transaction. See United States v. Naranjo, 52 F.3d 245, 250 (9th Cir.1995).
 
 
 11
 The evidence provides more than adequate support for the district court's conclusion that Graves was predisposed to sell crack in the quantity for which he was convicted. Graves's prior state conviction was for selling crack, and codefendant Kerry Willis submitted a declaration stating that he and Graves had been partners selling crack cocaine for six years and had participated in at least forty transactions together. Although the CI did suggest that Graves "rock up" half of the cocaine, Graves stated that he was in the "process" and would "probably just have the whole thing cooked up for [the CI] right now." There is absolutely no evidence that Graves was reluctant to cook powder cocaine into crack.
 
 
 12
 Similarly, Graves has failed to demonstrate that the government induced him to sell a larger quantity of crack than he was predisposed to sell. Willis's declaration states that during the six years that he and Graves were partners, they sold everything from rocks on the street to multiple kilograms of crack. Graves's only reluctance during the negotiations arose when Kendrick told him and Willis that the buyers wanted to purchase four kilograms; Graves and Willis wanted to deal only one kilogram at a time. The transaction that eventually occurred involved 744 grams of crack, almost fifteen times as much as necessary to trigger a twenty-year mandatory minimum sentence under section 841(b)(1). In light of this evidence, the fact that Graves's prior arrests and state felony conviction involved smaller amounts of crack is insufficient to show that he was unwilling to sell or incapable of selling the larger amount delivered in this case.
 
 III. Selective Prosecution Claim
 
 13
 Graves urges us to remand for the district court to reconsider its denial of his request for discovery pertaining to his claim that the government prosecuted him because he is African-American. In United States v. Armstrong, 48 F.3d 1508, 1510 (9th Cir.1995) (en banc), petition for cert. filed, 64 U.S.L.W. 3086 (U.S. July 27, 1995) (No. 95-157), we held that "the proper standard for determining whether an adequate showing has been made by a defendant seeking discovery in connection with a selective prosecution charge" is the "colorable basis" standard. We rejected earlier indications that this standard established a "high threshold" that should rarely justify discovery. Id. at 1513 (criticizing United States v. Bourgeois, 964 F.2d 935 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 290 (1992)).
 
 
 14
 The district court denied Graves's discovery request without the benefit of our en banc opinion in Armstrong. Nevertheless, we affirm. Graves's only "evidence" was his attorney's allegation that he had "conducted an informal survey of Bay Area criminal defense lawyers" and that "[n]ot one defense lawyer could recall a case in this judicial district in which the United States attorney had charged a non-minority defendant for distribution of crack cocaine." Although Graves also submitted a study that purported to find racially discriminatory federal charging practices in crack prosecutions, the study employed data from the Central District of California in the Los Angeles area, not the Northern District, whose U.S. Attorney charged Graves. Graves's allegation that it was "not implausible that a similar inquiry in the Northern District of California would yield a similar result" is not sufficient to create a colorable basis of discrimination upon which the district court should have ordered discovery. See Armstrong, 48 F.3d at 1512 ("mere allegations" are not sufficient to establish a colorable basis) (quoting Bourgeois, 964 F.2d at 939)).
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3